FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>G-I HOLDINGS, INC. f/k/a GAF CORPORATION,<br><br>      Debtor. | **O P I N I O N**<br><br>Civil No. 02-3626<br>(WGB) |
| G-I HOLDINGS, INC. f/k/a GAF CORPORATION and BUILDING MATERIALS CORPORATION OF AMERICA,<br><br>      Plaintiffs,<br><br>v.<br><br>RUDDLES A. BENNET, JR. et al.,<br><br>      Defendants. | Bankr. Case Nos.<br>01-30135 (RG)<br>01-38790 (RG)<br>(Jointly Administered) |

**APPEARANCES:**

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
By:  Dennis J. O'Grady, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

WEIL, GOTSHAL & MANGES LLP
By:  Martin J. Bienenstock, Esq.
     Kathryn L. Turner, Esq.
     Ralph I. Miller, Esq.
     Debra L. Goldstein, Esq.
     John B. Kinchen, Esq.
767 Fifth Avenue
New York, New York 10153

    Counsel for Plaintiffs and Counter-Defendants

SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
By:  David R. Gross, Esq.
     Nancy A. Washington, Esq.
     Whitney R. Chelnik, Esq.
One Gateway Center, 13th Floor
Newark, New Jersey 07102

KEATING, MUETHING & KLEKAMP, P.L.L.
By:  Kevin E. Irwin, Esq.
     Michael L. Scheier, Esq.
     Douglas Hensley, Esq.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

    Counsel for the Legal Representative of Present and Future
    Holders of Asbestos-Related Demands

LOWENSTEIN SANDLER, PC
By:  John K. Sherwood, Esq.
     Rose E. Ramsay, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

CAPLIN & DRYSDALE, CHARTERED
By:  Elihu Inselbuch, Esq.
299 Park Avenue, 27th Floor
New York, New York 10022

CAPLIN & DRYSDALE, CHARTERED
By:  Trevor W. Swett, Esq.
     Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, DC 20005

    Counsel for the Official Committee of Asbestos Claimants

**BASSLER, SENIOR DISTRICT JUDGE:**

    In the midst of a massive bankruptcy case, Debtor G-I Holdings, Inc. ("G-I") and its non-bankrupt subsidiaries seek a declaratory judgment that the subsidiaries are not successors to the liabilities of G-I and that the subsidiaries are not the alter ego of G-I.  In response, the Legal Representative of

Present and Future Holders of Asbestos-Related Demands ("Legal Representative") filed this motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

The Court properly exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and (e). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

For the following reasons, the Court **grants** the Legal Representative's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff G-I is a holding company and the successor to GAF Corporation. (Compl. ¶ 2.) G-I is the parent company of Plaintiffs Building Materials Corporation of America, Building Materials Investment Corporation, and Building Materials Manufacturing Corporation (collectively "BMCA"). (Id.) The Court refers to G-I and BMCA collectively as "Plaintiffs."

On January 5, 2001, G-I filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. G-I claims that it was forced to file for bankruptcy due to an increase in both the number of asbestos claims filed against G-I and the settlement amounts demanded by asbestos claimants. (Id. ¶ 3.) Asbestos claimants have also sued BMCA under theories of "successor liability" and/or "alter ego" between G-I and BMCA. (Id. ¶ 5.) In fact, approximately 2,500 state law actions were filed pre-petition against BMCA alleging asbestos-related claims.

(Legal Rep.'s Moving Br. at 8.)

The Bankruptcy Court appointed the Official Committee of Asbestos Claimants (the "Committee") to represent the interests of G-I's present asbestos claimants: those individuals exposed to G-I's asbestos products pre-petition that manifest an asbestos-related injury prior to plan confirmation.  The four individual defendants named in this action qualify as "present asbestos claimants"; each has sued BMCA alleging liability based on theories of successor liability and alter ego.

In addition, the Bankruptcy Court appointed the Legal Representative to represent the interests of any future claimants: those individuals currently unknown to the parties that have not yet manifested an asbestos-related injury but may hold future claims.

On February 7, 2001, Plaintiffs commenced an adversary proceeding against six individual asbestos claimants "on behalf of themselves and all others similarly situated, including all future asbestos claimants."  (Compl. at 1.)  Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), Plaintiffs sought a declaration that BMCA is not liable for asbestos claims under theories of successor liability and/or alter ego.

The individual defendants answered on March 13, 2001.  The Committee moved to intervene, and the Bankruptcy Court granted this request in November 2001.  In addition to its answer and

affirmative defenses, the Committee asserted counterclaims against Plaintiff seeking declaratory relief that BMCA was liable under theories of successor liability and piercing the corporate veil. (Committee's Counterclaims ¶¶ 129-35.) On October 18, 2002, Plaintiffs amended the Complaint to add the Legal Representative as a defendant.

## DISCUSSION

### I. Standard for 12(c) Motion

The Legal Representative now moves for judgment on the pleadings, alleging that Plaintiffs have failed to state a claim for which relief may be granted. Rule 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. See Children's Seashore House v. Waldman, 197 F.3d 654, 657 n.1 (3d Cir. 1999); Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

Motions to dismiss for failure to state a claim are viewed with disfavor. See Caldwell Trucking PRP Group v. Spaulding Composites Co., 890 F. Supp. 1247, 1252 (D.N.J. 1995). "In deciding a motion to dismiss for failure to state a claim, all allegations in the pleadings must be accepted as true and the

5

plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations." Id. (internal citations omitted).  The test for reviewing a motion to dismiss for failure to state a claim is whether under a reasonable reading of the pleadings, the plaintiff may be entitled to relief.  Simon v. Cebrick, 53 F.3d 17, 19 (3d Cir. 1995).

**II. Appropriateness of this Declaratory Judgment Action**

The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added). Courts have considerable discretion as to whether or not a declaratory judgment should be entered.  See Sun Oil Co. v. Transcontinental Gas Pipe Line Co., 108 F. Supp. 280, 282 (E.D. Pa. 1952), aff'd, 203 F.2d 957 (3d Cir. 1953).  Nonetheless, courts should liberally interpret the Act to permit declaratory judgment actions.  See Exxon Corp. v. F.T.C., 588 F.2d 895, 900 (3d Cir. 1975) (citations omitted).

The Legal Representative claims entitlement to judgment on the pleadings on three grounds: (1) BMCA may not use the Declaratory Judgment Act to obtain a preemptive declaration of non-liability based on state law defenses; (2) this action does not involve a controversy of sufficient immediacy; and (3) Plaintiffs may not seek relief under the Declaratory Judgment Act

6

because Congress has enacted a statute that provides for the specific relief requested. As will be elaborated upon below, the Court finds persuasive the third ground and need not reach the first two grounds for dismissal.

### III. Channeling Injunction Under 11 U.S.C. § 524(g)

The Legal Representative argues that declaratory relief is improper here because 11 U.S.C. § 524(g) applies to this case. The Bankruptcy Code was amended in 1994 to include § 524(g) so that companies could "globally resolve claims and free [themselves] from future asbestos tort liability." (Legal Rep.'s Br. at 13.) The Legal Representative argues that reliance upon nonbankruptcy procedural mechanisms such as the Declaratory Judgment Act to resolve future asbestos liabilities would "significantly undermine the protections for creditors built into the Bankruptcy Code." Ortiz v. Fibreboard Corp., 527 U.S. 815, 860 n.34 (1999). In addition, the Legal Representative argues that his use as a proxy for future claimants in Plaintiffs' successor liability action is an abuse of the Legal Representative's role under the Bankruptcy Code.

Section 524(g) provides asbestos defendants with the benefit of a statutory "channeling injunction" applicable to present and future holders of asbestos-related tort claims. 11 U.S.C. § 524(g)(1). Under section 524(g)(2)(B)(ii), the debtor creates a trust as part of its plan of reorganization. The trust is then

7

vested with the reorganized debtor's stock, which will pay present and future asbestos-related claims. § 524(g)(2)(B)(i)(II).  In exchange for funding the trust, the debtor, its predecessors and successors in interest, and any affiliates receive broad protection from any asbestos-related claims through the bankruptcy court's issuance of a "channeling injunction" directing asbestos claims exclusively to the trust. § 524(g)(3)-(4).

"[A]s part of the proceedings leading to issuance of such [channeling] injunction, the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands of such kind." § 524(g)(4)(B)(i).  In this case, the Bankruptcy Court granted the Legal Representative "standing as a party in interest to be heard on every matter relevant to the interests of Demand Holders in G-I's chapter 11 case, including but not limited to, adversary proceedings, contested matters, and matters involving section 524(g)."  (Order Appointing Legal Rep. of Present and Future Holders of Asbestos-Related Demands in G-I's Chapter 11 Case ("Appointment Order") of 10/10/01.)

Based on the Appointment Order, Plaintiffs contend that "the purpose of the Legal Representative is to represent demand holders (future claimants) so that complete relief can be granted in the [declaratory judgment] case, and the company can then be

8

reorganized to maximize value without a cloud of future claims reducing the value of the reorganized company." (Pls.' Suppl. Br. at 3.)  Plaintiffs argue that the fact that 524(g) requires the appointment as a prerequisite to a channeling injunction does not mean that the role of the Legal Representative is solely limited to matters involving 524(g).  The Legal Representative counters that "the Legal Representative's involuntary participation in this case as a defendant has no statutory basis, and is in fact a distortion of his role in G-I Holdings Inc.'s reorganization proceedings."  (Legal Rep.'s Suppl. Br. at 2.)

In fact, the scope of the Legal Representative's function is not clearly established.  Section 524(g) makes no mention of the role of the Legal Representative in bankruptcy proceedings.  Furthermore, the term "legal representative" is not used in any other provision of the Bankruptcy Code.  Whether the Legal Representative can be conscripted to defend the interests of future asbestos claimants in this declaratory judgment action is an issue of first impression.

Plaintiffs make two main arguments regarding the standing of the Legal Representative in this case.  First, Plaintiffs argue that the Appointment Order and the Legal Representative's own filings in other proceedings support Plaintiffs' contention that the Legal Representative is a proper defendant here.  Second, Plaintiffs contend that the Legal Representative acts as a

9

guardian ad litem for the future claimants whose virtual representation of his constituents will properly bind them to this Court's determination of successor liability.

**A.  Appointment Order and Legal Representative's Memoranda**

Plaintiffs note that the Appointment Order states that the Legal Representative has "standing as a party in interest to be heard on <u>every</u> matter" related to G-I's bankruptcy. (Appointment Order at 2 (emphasis added).) This broad language allowed the Legal Representative to intervene in another adversary proceeding related to G-I's bankruptcy in which the Committee and the Legal Representative are seeking to avoid the transfer of International Specialty Products stock ("ISP Avoidance Action"). See <u>In re G-I Holdings, Inc.</u>, 292 B.R. 804, 806-07 (Bankr. D.N.J. 2003). In moving to intervene, the Legal Representative argued:

> Resolving a tortfeasor's liability to unknown persons who cannot represent their own interests in the bankruptcy proceedings raises a significant due process problem. The participation of a legal representative of demand holders in the bankruptcy proceedings is designed to remedy this due process problem and ensure that the resolution of future tort claims is binding on demand holders as they manifest disease, and seek compensation for their injuries, throughout the future.

(Legal Rep.'s Memo. in Support of Motion for Authority to Seek Intervention as Co-Pl. in the ISP Avoidance Action Against Samuel Heyman, at 3, ¶ 7.) In granting the motion, the Bankruptcy Court concluded that "[n]othing in the plain language or the legislative history of § 524(g) suggested that Congress intended

to limit the role of the legal representative." 292 B.R. at 809. To the contrary, "limiting the role of a legal representative is inappropriate because the facts of different cases may require that a legal representative have a different one." Id.

Despite this sweeping language, the ISP Avoidance Action cannot confer upon Plaintiffs the power to conscript the Legal Representative as an unwilling defendant in this action.[1] The Legal Representative's purpose in the ISP Avoidance Action was fundamentally different from his role in this proceeding. In the ISP Avoidance Action, the Bankruptcy Court granted the Committee and the Legal Representative permission to wield G-I's powers under § 544(b) of the Bankruptcy Code to avoid a fraudulent transfer.[2] As co-representatives of the estate, the Committee and the Legal Representative acted for the benefit of all creditors. Moreover, the fruits of the avoidance action would be returned to the estate; the future claimants may in turn see greater benefits placed into a § 524(g) trust.

This case, however, is essentially a nonbankruptcy action to determine whether BMCA, a non-debtor, carries successor liability from G-I and is therefore liable to asbestos claimants.

---

[1] The Court notes that the Bankruptcy Court's May 8, 2003 Opinion in the ISP Avoidance Action was "limited in scope to determining whether [the Bankruptcy Court] should grant the Legal Representative authority to move to intervene in the Avoidance action pending before the United States District Court for the Southern District of New York." 292 B.R. at 807-08.

[2] G-I did not initiate the action itself because it had acknowledged a conflict in suing its beneficial owner, Samuel Heyman.

11

Plaintiffs desire the Legal Representative's participation so as to "to ensure the binding determination on successor liability." (Pls.' Suppl. Br. at 13.)  But conscripting the Legal Representative in this manner does not comport with notions of due process.

The concept of a legal representative is embedded in § 524(g) as part of a framework for dealing with massive asbestos liabilities in bankruptcy.  "[S]ection 524(g) provides a special form of supplemental injunctive relief for an insolvent debtor [and its non-debtor affiliates] facing the unique problems and complexities associated with asbestos liability." In re Combustion Eng'g, Inc., 391 F.3d 190, 234 (3d Cir. 2004).  The statute calls for the creation of a channeling injunction and trust that will cleanse the debtor corporation of its present and future asbestos liability while providing a source of funding to pay future claims.  § 524(g)(1), (2)(B); see also Combustion Eng'g, 391 F.3d at 234.  "[A] debtor must satisfy the perquisites set forth in 524(g)" to obtain this relief.  Id.  The statutory prerequisites are "specifically tailored to protect the due process rights of future claimants." Id. at 234 n.45.  The appointment of a legal representative is only one of the many procedural safeguards that protect future claimants, who will be bound by terms of the channeling injunction.  See, e.g. § 524(g)(2)(B), 4(B).

12

In this action, however, Plaintiffs are not seeking to utilize the Legal Representative for the purpose of obtaining a § 524(g) channeling injunction. Plaintiffs counsel represented to this Court during oral argument that this declaratory judgment action is meant to avoid § 524(g)[3]: "There is no need to get to the 524(g) stage if we are successful in showing there is no successor liability. . ." (2/24/05 Tr. at 18:6-8.) Instead, non-debtor BMCA is seeking a declaratory judgment, which is a form of nonbankruptcy relief, that BMCA holds no successor liability. By virtue of the Legal Representative's participation, Plaintiffs hope to bind future claimants to that judgment. Mere participation by the Legal Representative, however, cannot bind future claimants to the result of this nonbankruptcy proceeding.

"The general rule always has been that a judgment in an in-personam action is not binding on anyone who has not been designated as a party and been served with process." 7AA Charles Alan Wright et al., Federal Practice and Procedure § 1789, at 546 (citing Pennoyer v. Neff, 95 U.S. (5 Otto) 714, 24 L. Ed. 565 (1877)). Outside of bankruptcy, this due process problem can be solved by the maintenance of a class action pursuant to Fed. R. Civ. P. 23. To maintain a class action, a party must satisfy the

---

[3] By avoiding § 524(g), however, Plaintiffs will also avoid its accompanying procedural safeguards.

prerequisites of Rule 23(a) and come within one provision of Rule 23(b) in order to ensure that binding absent class members comports with notions of fairness and due process.  See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 785 (3d Cir. 1995).

Plaintiffs originally filed this case as a defendant class action, but withdrew their class allegations upon amending the complaint to add the Legal Representative as a defendant.  Rather than complying with the requirements of Rule 23, Plaintiffs seek to conscript the Legal Representative for their own purposes.  But Plaintiffs are also avoiding the prerequisites built into § 524(g) because they do not feel a channeling injunction is necessary at this time.  This approach essentially bypasses the safeguards of both Rule 23 and § 524(g) that protect the due process rights of the future claimants.  Without those safeguards in place, the Court cannot require the Legal Representative to remain in this action.

**B.  Guardian Ad Litem**

Despite the lack of safeguards in this case, Plaintiffs contend that the Legal Representative "is essentially a guardian ad litem for future claimants that protects the court from having to make all future claimants parties."  (Pls.' Suppl. Br. at 13.)  Citing In re Johns-Manville Corp., 36 B.R. 743, 758-59 & n.7 (Bankr. S.D.N.Y. 1984), Plaintiffs argue that the Legal

14

Representative properly represents the future claimants in this action through the doctrine of equitable virtual representation.[4] Plaintiffs' reliance on Johns-Manville is misplaced.

Johns-Manville was the model for § 524(g), and thus for the legal representative. In Johns-Manville, the bankruptcy court determined that it would appoint a representative for future claimants but did not finalize a form of representation:

> This Court herewith considers in *preliminary* fashion several formulations of legal representation: guardian ad litem, amicus curiae and examiner. These alternative forms of representation are *no more than precatory* and are not preclusive of other considerations.

36 B.R. at 758-59 (emphasis added). The Court noted that the guardian ad litem model would allow a legal representative to bind future claimants by virtue of the doctrine of virtual representation. Id. at 758 n.7. Instead of adopting this model, the Court ordered supplemental briefing and scheduled a hearing on the issue. Id. at 759.

The Court ultimately rejected the guardian ad litem model and its concomitant ability to bind future claimants: "On August 14, 1984, the bankruptcy court appointed Leon Silverman as the

---

[4] Plaintiffs also cite In re Amatex Corp., 755 F.2d 1034 (3d Cir. 1985), for this proposition, but Amatex never explicitly equates the legal representative with a guardian ad litem. In that case, debtor Amatex filed a petition to appoint a guardian ad litem. See id. at 1043. Although the Third Circuit Court of Appeals reversed the district court's ruling and required a legal representative to be appointed, the Court of Appeals never stated that the legal representative would take the form of a guardian ad litem. Id. at 1044.

15

'Legal Representative,' with the powers of a committee to represent the future claimants, but *without power to bind such persons*." Manville Corp. v. Equity Sec. Holders' Comm. (In re Johns-Manville Corp.), 60 B.R. 842, 845 (S.D.N.Y. 1986) (emphasis added), rev'd on other grounds, 801 F.2d 60 (2d Cir. 1986); see also In re Johns-Mansville Corp., 52 B.R. 940, 943 (S.D.N.Y. 1985) (likening the legal representative's powers to those a committee wields under § 1103 and noting that "the powers described in § 1103 are nonbinding"). These subsequent decisions underscore the fact that the Legal Representative is not a guardian ad litem with the power to bind future claimants. Thus, this Court sees no reason to draft the Legal Representative in this case in the futile hope of obtaining a binding determination of BMCA's successor liability.

The Court understands that "[a] binding determination that complete relief on successor liability will aid in reorganizing [G-I] to maximize value without a cloud of future claims." (Pls.' Suppl. Br. at 13.) The Court recognizes that judicial efficiency would be benefitted by such a binding determination. This binding determination, however, cannot come at the expense of the due process rights of the future claimants.

The Court also understands that Plaintiffs wish to determine BMCA's successor liability prior to creating a § 524(g) trust, in the hopes that BMCA would not have to contribute to that trust.

'Legal Representative,' with the powers of a committee to represent the future claimants, but *without power to bind such persons*." Manville Corp. v. Equity Sec. Holders' Comm. (In re Johns-Manville Corp.), 60 B.R. 842, 845 (S.D.N.Y. 1986) (emphasis added), rev'd on other grounds, 801 F.2d 60 (2d Cir. 1986); see also In re Johns-Mansville Corp., 52 B.R. 940, 943 (S.D.N.Y. 1985) (likening the legal representative's powers to those a committee wields under § 1103 and noting that "the powers described in § 1103 are nonbinding"). These subsequent decisions underscore the fact that the Legal Representative is not a guardian ad litem with the power to bind future claimants. Thus, this Court sees no reason to draft the Legal Representative in this case in the futile hope of obtaining a binding determination of BMCA's successor liability.

The Court understands that "[a] binding determination that complete relief on successor liability will aid in reorganizing [G-I] to maximize value without a cloud of future claims." (Pls.' Suppl. Br. at 13.) The Court recognizes that judicial efficiency would be benefitted by such a binding determination. This binding determination, however, cannot come at the expense of the due process rights of the future claimants.

The Court also understands that Plaintiffs wish to determine BMCA's successor liability prior to creating a § 524(g) trust, in the hopes that BMCA would not have to contribute to that trust.

But at times § 524(g) requires companies to forgo a final determination on liability in exchange for future certainty.  See § 524(g)(4)(A)(ii) (channeling injunction may bar actions against a third party that "is *alleged* to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor") (emphasis added).  Plaintiffs abandoned any attempt to bind future claimants to this action, by foregoing certification of future claimants as a class under Rule 23.  Plaintiffs current efforts to obtain certainty through the use of the Legal Representative under § 524(g) distorts the statutory function of the Legal Representative.

Because the Court finds that the forced participation of the Legal Representative in the successor liability action is not statutorily authorized and would be an abuse of his role, the Court will grant his motion for judgment on the pleadings.

## CONCLUSION

For the reasons set forth above, the Court **grants** the Legal Representative's motion for judgment on the pleadings.

An appropriate order follows.

>    /s/ William G. Bassler
> WILLIAM G. BASSLER, U.S.S.D.J.

Dated: July 6, 2005