<u>FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>G-I HOLDINGS, INC., <u>et</u> <u>al.</u> (f/k/a GAF CORPORATION.)<br><br>      Debtor. | **O P I N I O N**<br><br>Civil No. 02-3626<br>(WGB) |
| G-I HOLDINGS, INC.,(f/k/a GAF Corp.), BUILDING MATERIALS CORPORATION OF AMERICA, BUILDING MATERIALS INVESTMENT CORPORATION, AND BUILDING MATERIALS MANUFACTURING CORPORATION,<br><br>      Plaintiff(s),<br><br>v.<br><br>RUDDLES A. BENNET, JR. <u>et</u> <u>al.</u>,<br><br>      Defendant(s). | Bankr. Case Nos.<br>01-30135 (RG)<br>01-38790 (RG)<br>(Jointly Administered)<br><br>Adv. Pro. No.<br>01-3066(RG) |
| OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS,<br><br>      Counterclaimant,<br><br>v.<br><br>G-I HOLDINGS, INC.,(f/k/a GAF Corp.), BUILDING MATERIALS CORPORATION OF AMERICA, BUILDING MATERIALS INVESTMENT CORPORATION, AND BUILDING MATERIALS MANUFACTURING CORPORATION,<br><br>      Counterdefendant(s). | |

1

**APPEARANCES:**

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
By:  Dennis J. O'Grady, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

WEIL, GOTSHAL & MANGES LLP
By:  Martin J. Bienenstock, Esq.
     Kathryn L. Turner, Esq.
     Ralph I. Miller, Esq.
     Debra L. Goldstein, Esq.
     John B. Kinchen, Esq.
767 Fifth Avenue
New York, New York 10153

    Counsel for Plaintiffs and Counterdefendants

SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
By:  David R. Gross, Esq.
     Nancy A. Washington, Esq.
     Whitney R. Chelnik, Esq.
One Gateway Center, 13th Floor
Newark, New Jersey 07102

KEATING, MUETHING & KLEKAMP, P.L.L.
By:  Kevin E. Irwin, Esq.
     Michael L. Scheier, Esq.
     Douglas Hensley, Esq.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

    Counsel for the Legal Representative of Present and Future
    Holders of Asbestos-Related Demands

CAPLIN & DRYSDALE, CHARTERED
By:  Elihu Inselbuch, Esq.
299 Park Avenue, 27th Floor
New York, New York 10022

LOWENSTEIN SANDLER, PC
By:  John K. Sherwood, Esq.
     Rose E. Ramsay, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

    Counsel for the Official Committee of Asbestos Claimants

GOLDSTEIN, LEM & ISAACSON, PC
By:  Nancy Isaacson, Esq.
100 Morris Avenue
Springfield, New Jersey 07068

    Counsel for the Individual Defendants

**BASSLER, SENIOR DISTRICT JUDGE:**

    In this bankruptcy appeal, Plaintiffs G-I Holdings, Inc. (f/k/a GAF Corporation) ("G-I"), Building Materials Corporation of America ("BMCA"), Building Materials Investment Corporation ("BMIC"), and Building Materials Manufacturing Corporation ("BMMC") (collectively, "Plaintiffs") seek a declaratory judgment that BMCA, BMIC, and BMMC cannot be held liable for the asbestos-related claims brought against G-I under any theory of successor liability or "alter ego" (piercing the corporate veil). Defendant Official Committee of Asbestos Claimants (the "Official Committee") have counterclaimed, alleging that BMCA, BMIC, and BMMC could be held vicariously liable for the claims.  The defendants also demanded a jury trial on both counts of the complaint and the counterclaims.

    Plaintiffs have filed a motion to strike the jury demand. For the reasons stated below, the Court concludes that the defendants are entitled to a jury trial under the Seventh Amendment on both the issue of successor liability and the issue of piercing the corporate veil.  Accordingly, the Court **denies** Plaintiffs' motion to strike the jury demand.

**I.    Background**

G-I, formerly GAF Corporation ("GAF"), a holding company that owns BMCA, BMIC, and BMMC, filed for Chapter 11 bankruptcy on January 5, 2001 to provide for a fair resolution of all its liabilities, including a resolution of all asbestos-related claims against it. (First Am. Compl. ¶¶ 2,5.) G-I claims that it was forced to file for bankruptcy due to an increase in both the number of asbestos claims filed against G-I and the settlement amounts demanded by asbestos claimants. (Id. ¶ 4.) Additionally, asbestos claimants began joining BMCA, BMIC, and BMMC along with G-I in their tort suits, seeking money damages and alleging that G-I's subsidiaries were vicariously liable for GAF's asbestos torts on theories of piercing the corporate veil and successor liability. (Id. ¶ 3.)

In response to these complaints against BMCA, BMIC, and BMMC, Plaintiffs filed the above-captioned adversary proceeding seeking a declaration that BMCA, BMIC, and BMMC cannot be held liable for asbestos-related claims based on injuries alleged to have been caused by products sold by G-I and GAF. Specifically, in their First Amended Complaint, Plaintiffs have requested that the Court provide:

1. Entry of judgment on Count I for Plaintiffs declaring that BMCA, BMIC, and/or BMMC are not liable for Asbestos Claims under any theory of successor liability;

2. Entry of judgment on Count II for Plaintiffs

>declaring that BMCA, BMIC, and/or BMMC are not liable for Asbestos Claims based on a theory that MCA, BMIC, and/or BMMC are the "alter ego" of either G-I, GAF BMC, and/or GAF Corporation . . .

(Id. at 11.)  Plaintiffs filed the adversary proceeding against three groups: the Official Committee, individuals who sued BMCA and have become defendants in this case ("Individual Defendants")[1], and C. Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos-Related Demands ("Legal Representative").  The Legal Representative has since been dismissed from this action pursuant to the Court's Opinion and Order dated July 6, 2005.

   The Individual Defendants filed their Answer to the First Amended Complaint with their Jury Demand on November 14, 2002.  The Official Committee filed its Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial in Response to the First Amended Complaint on November 18, 2002.  The Official Committee's Counterclaims seek a declaration that BMCA, BMIC, and BMMC are successors in liability to all of the asbestos-related claims against G-I and GAF (Count I) and that the corporate veil of these entities should be disregarded (Count II).  If granted, the requested relief would allow asbestos claimants to hold BMCA, BMIC, and BMMC liable for asbestos-related claims based on

---

[1] Before G-I filed for bankruptcy, the Individual Defendants filed separate lawsuits against G-I and BMCA, among others, in the state courts of Louisiana, New York, and Georgia.  (First Am. Compl. ¶¶ 14-17.)

5

products by G-I and GAF.  Plaintiffs now move to strike the jury demand by the Official Committee and the Individual Defendants (collectively, "Defendants").  This Court exercised jurisdiction over this matter on May 13, 2003 by granting the Official Committee's request to withdraw the reference from the Bankruptcy Court with respect to this Adversary Proceeding, No. 01-3066.

**II. Discussion**

Defendants' assert that they have a constitutional right to a trial by jury under the Seventh Amendment of the United States Constitution.  Ratified in 1791, the Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . ." U.S. Const. amend. VII.  The phrase "Suits at common law" refers to "suits in which *legal* rights were to be ascertained and determined, in contradiction to those where equitable rights alone were recognized, and equitable remedies were administered."  Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1998) (quoting Parsons v. Bedford, (1830)(emphasis in original)).

The Seventh Amendment also applies to claims that did not exist at common law in 1791, if they "are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."  Feltner, 523 U.S. at 348

6

(quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)).

"[T]o determine whether a [claim] is more analogous to cases tried in courts of law than to suits tried in court of equity or admiralty, [the court] examine[s] both the nature of the [claim] and the remedy sought." Feltner 523 U.S. at 348. The trial court engages in a two-step process:

> First, [the court] compare[s] the [claim] to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the court] examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

Granfinanciera, 492 U.S. at 42 (citing Tull v. United States, 481 U.S. 412, 417-18 (1987)). "'[A]ny seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" Billings v. Ravin, Greenberg & Zanick, P.A., 22 F.3d 1242, 1260 (3d Cir. 1994) (quoting Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 565 (1990)).

**A.   Effect of a Declaratory Judgment Action**

Plaintiffs initiated this lawsuit as a declaratory judgment action. The fact that Plaintiffs have filed for a declaratory judgment does not affect Defendants' right to a jury trial. A declaratory judgment in itself is neither legal nor equitable in nature. See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 284 (1988). If the asbestos claimants would have been

7

entitled to a trial by jury had they sued Plaintiffs for their injuries, the claimants cannot be deprived of their right to a jury trial merely because Plaintiffs filed for declaratory relief first.  See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959).

The Third Circuit Court of Appeals clarified the holding of Beacon Theatres in Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185 (3d Cir. 1979).  That court held that the relevant question in determining whether a right to a jury trial exists in an action for declaratory relief is "in what kind of suit the claim would have come to the court if there was no declaratory judgment remedy," and whether a right to trial by jury applies to that underlying claim.  Id. at 1189.

> If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit[,] an action brought by one who would have been a defendant at common law[,] then the parties have a right to a jury.  But if the action is the counterpart of a suit in equity, there is no such right.

Id.  In this case the issue is whether, had Defendants first brought an action for recovery on their asbestos claims against Plaintiffs, the underlying claims in that hypothetical lawsuit would be legal or equitable.

**B.   Right to Try Successor Liability Claims to a Jury**

In Count I of their complaint, Plaintiffs seek a declaratory judgment that BMCA is not liable for asbestos claims under any

theory of successor liability. (First Am. Compl. at 8.) In its answer and counterclaims, the Official Committee seeks the opposite: a declaratory judgment that BMCA, BMIC, and BMMC are liable for asbestos claims against G-I under a theory of successor liability. (Answer, Affirm. Defenses, Countercls. & Demand for Jury at 33.)

In the only federal appellate case addressing this issue, the First Circuit Court of Appeals upheld "the district court's ruling that the successor liability [count was] equitable and not subject to jury determination." Ed Peters Jewelry Co. v. C & J Jewelry Co., 215 F.3d 182, 186 (1st Cir. 2000) (citation omitted). In Ed Peters, plaintiff Peters was owed unpaid commissions from defendant Anson; Peters obtained state court judgments for sums certain against Anson. Id. at 184-85. Peters commenced the federal action against Anson and its successors under a theory of successor liability to recover the commissions. Id. at 183. The district court held that successor liability sounds in equity and therefore does not carry the right to a jury trial. Id. at 184. In affirming the district court, the appellate court apparently based its holding on the fact that "this case does not involve the computation of damages [due to the state court judgments already obtained by Peters], which is often considered a determination to be made by a jury." Id. This statement appears to limit the holding to the facts of that

9

case. Moreover, the holding in Ed Peters is flawed because the First Circuit failed to explicitly conduct the Granfinanciera analysis.[2]

Under the first step of the Granfinanciera analysis, the Court must ascertain the origins of the doctrine of successor liability. The weight of authority favors a finding that successor liability is an equitable doctrine. See Ed Peters Jewelry Co. v. C & J Jewelry Co., 124 F.3d 252, 267 (1st Cir. 1997) ("successor liability is an equitable doctrine, both in origin and nature"); Rego v. ARC Water Treatment Co., 181 F.3d 396, 401 (3d Cir. 1999) (observing that successor liability "is derived from equitable principles"); Chi. Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Tasemkin, Inc., 59 F.3d 48, 49 ("Successor liability is an equitable doctrine, not an inflexible command. . ."); Magers v. Bonds (In re Bonds Distrib. Co.), No. 97-52130C-7W, 98-6044, 2000 WL 33682815, at *10 (Bankr. M.D.N.C. Nov. 15, 2000) ("There is support for the proposition that the doctrine is equitable in nature or derived from equitable principles."). Although these courts have found that successor liability has roots in equity, the Court must also examine the remedy sought in a successor liability action.

---

[2] Nor can this Court infer that Granfinanciera was implicitly followed because the First Circuit failed to examine the remedy sought, which is the most important part of the analysis.

Determining whether the remedy sought is legal or equitable is the most important element of the Granfinanciera analysis. 492 U.S. at 42. The Court therefore must discern what type of legal remedy Defendants would have sought had they initiated the underlying successor liability action. See Owens-Illinois, 610 F.2d at 1189. If Defendants had filed suit directly against BMCA, BMMC, and BMIC, they would be seeking a determination of liability and money damages. (Defs.' Br. at 37.) Therefore, the remedy sought is legal. See Jackson v. Diamond T. Trucking, Co., 100 N.J. Super. 186, 191 (N.J. Super. Ct. Law Div. 1968) (because successor liability claim "is for a judgment of individual liability," claim is "properly brought in the Law Division"); see also Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 760, 70 So. 789, 794 (La. 1916) (where a corporation has been divested of its assets, "not only may the fund be followed, by the aid of equity, for the benefit of the creditor, but he may recover, in an action at law, against the corporation which has taken over such fund, with the business of his debtor"). Because the remedy sought is legal, Defendants are entitled to a jury trial on the successor liability claim and counterclaim.

In support of this conclusion, the Court is persuaded by the reasoning of Bonds Distributing, which is directly on point. In Bonds Distributing, 2000 WL 33682815, at *10-11, the Bankruptcy Court for the Middle District of North Carolina rejected the

holding in Ed Peters and concluded that a claim for successor liability contained a right to a jury trial. In that case, "the Trustee argue[d] that Bonds, Inc. [was] liable for the debts of the Debtor because Bonds, Inc. [was] a mere continuation of the Debtor." Id. at *10. As in Bonds Distributing, Defendants argue that BMCA, BMMC, and BMIC are liable for the torts of G-I because the subsidiaries are a mere continuation of G-I. In addition, Defendants here seek a declaratory judgment of liability against G-I, BMCA, BMMC, and/or BMIC; similarly, the Trustee in Bonds Distributing sought a judgment against Bonds for monetary damages. Id.

The bankruptcy court in Bonds Distributing acknowledged that "[t]here is support for the proposition that the doctrine [of successor liability] is equitable in nature or derived from equitable principles." Id. (citation omitted). The bankruptcy court, however, concluded that the defendants were entitled to a jury trail under the second and more important step of the Granfinanciera analysis. "[T]he remedy sought is a judgment against Bonds, Inc. for monetary damages." Id. Because the relief of monetary damages is legal in nature, the defendants had a right to a jury trial. Id. The court then distinguished its holding from Ed Peters by pointing out that unlike the Ed Peters case, Bonds Distributing involved the computation of damages. Id. at *11.

12

The Court acknowledges that the bankruptcy court in Bonds Distributing began its analysis with a discussion of North Carolina law. Id. at *10. Nevertheless, New Jersey law employs the same formulation of successor liability as North Carolina. In New Jersey, the purchaser of all or substantially all of the assets of another company is generally not liable for the debts and liabilities of the transferor. Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 340 (N.J. 1981). However, the purchaser will be held responsible for the debts and liabilities of the seller where

> (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities, (2) the transaction amounts to a consolidation or merger of the seller and purchaser, (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

Id. at 340-41. This is the same statement of successor liability that the bankruptcy court in Bonds Distributing found to give rise to the right to a jury trial. See Bonds Distrib., 2000 WL 33682815, at *10-11.

In addition, courts in New Jersey have determined that successor liability is a factual determination to be made by a jury. See Parsons Mfg. Co. v. Hamilton Ice Mfg. Co., 78 N.J.L. 309, 312 (N.J. 1909) (successor liability "was a question of fact for the jury to determine"). The fact that many reported cases of successor liability have been brought in the equity courts

13

does not diminish the fact that the law courts are open to the same claims.  See Jackson, 100 N.J. Super. at 191.

Because Defendants would be seeking monetary damages had they initiated the lawsuit, the Court holds that Defendants have a right to a jury trial on the issue of successor liability.

### C. Right to Try Veil-Piercing and Alter Ego Claims to a Jury

In Count II of their complaint, Plaintiffs seek a declaratory judgment that BMCA is not liable for asbestos claims under an "alter ego" theory.  (First Am. Compl. at 8.)  In its answer and counterclaims, the Official Committee seeks to pierce the corporate veil separating G-I from BMCA, BMIC, and BMMC.  (Answer, Affirm. Defenses, Countercls. & Demand for Jury at 34.)  Therefore, the Court must determine whether Defendants have a right to a jury trial on the issue of piercing the corporate veil.

Applying the two-step analysis required by Granfinanciera, the Court must first determine whether the doctrine of piercing the corporate veil is legal or equitable in nature.  Prior to Granfinanciera, the Supreme Court indicated that the doctrine has roots in equity: "the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy. . . .  In such cases, courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form."  Bangor

14

Punta Operations, Inc. v. Bagor & Aroostook R.R. Co., 417 U.S. 703, 713 (1974). In the Third Circuit, the District of Delaware came to the same conclusion: "Piercing the corporate veil is an action that sounds in equity." United States v. Golden Acres, Inc., 68 F. Supp. 96, 103 (D. Del. 1988) (applying Delaware law), aff'd sub nom. without op., Golden Acres, Inc. v. Sutton Place Corp., 879 F.2d 857 (3d Cir. 1989). These cases, however, were decided prior to Granfinanciera; thus, those courts did not perform the requisite two-step analysis.

After Granfinanciera, the Second Circuit Court of Appeals conducted a thorough historical analysis of the origins of piercing the corporate veil. William Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 134-36 (2d Cir. 1991). That court concluded that the doctrine has origins in both law and equity. Id. at 136. Citing Passalacqua, the Seventh Circuit Court of Appeals concurred that "the doctrine of piercing the corporate veil has roots in both courts of law and equity." Int'l Fin. Servs. Corp. v. Chromas Technologies Can., Inc., 356 F.3d 731, 736 (7th Cir. 2004). Therefore, the second, and most important, factor in the analysis will be determinative here.

Under the second factor, the Court must inquire as to the remedy sought. A circuit split exists as to whether the nature of the relief in an action to pierce the corporate veil is legal

15

or equitable.  In Passalacqua, the Second Circuit Court of Appeals held that the relief sought was legal because the plaintiff sought money damages in its effort to pierce the corporate veil.  933 F.2d at 136 ("the nature of the relief sought in the instant case is relief typically achieved in an action at law").  In this case, Defendants argue that, had they brought an action attempting to pierce the corporate veil between G-I and BMCA, BMMC, and/or BMIC, they would be seeking a declaration of liability and money damages against BMCA, BMMC, and/or BMIC.  (Defs.' Br. at 23.)

On the other hand, the Seventh Circuit Court of Appeals held that the doctrine of piercing the corporate veil is an equitable remedy.  356 F.3d at 736.  In International Financial Services, the Seventh Circuit noted that, under Illinois law, piercing the corporate veil was a discretionary remedy used by a court to prevent injustice or inequity.  Id. at 736-37.

Plaintiffs contend that Defendants actually seek to strip BMCA, BMIC, and BMMC of their corporate protection, which is an equitable remedy.  (Pls.' Reply Br. at 3.)  However, had any of the individual defendants sued G-I, BMCA, BMMC, and/or BMIC under an alter ego or veil-piercing theory, the remedy sought would have been monetary damages.  Defendants therefore argue that because monetary damages are a legal remedy, Defendants would have been entitled to a jury trial had they filed suit first, and

thus they are now entitled to a jury trial.  See Passalacqua, 933 F.2d at 136-37; see also Bonds Distributing, 2000 WL 33682815, at *8.  Because Defendants seek to establish Plaintiffs' liability for asbestos claims--and that Plaintiffs seek to establish their non-liability--the remedy is legal.  See Passalacqua, 933 F.2d at 136.

Once again, the Court is persuaded by the rationale in Bonds Distributing on this issue.  2000 WL 33682815, at *7-8.  In that case, the bankruptcy court noted, "The weight of authority appears to recognize a right to jury trial with respect to claims seeking to pierce the corporate veil based upon the theories of alter ego or mere instrumentality."  Id. at *8.  The bankruptcy court went on to grant a jury trial on the veil-piercing claim because the plaintiffs sought money damages against a shareholder by imposing liability upon him for the liabilities of the corporation.  Id.  The same situation exists here.  Defendants seek to impose (unlimited) liability upon BMCA, BMIC, and BMMC for the asbestos-related liabilities of G-I in an effort to obtain money damages for asbestos-related injuries.  Therefore, the Court agrees that the remedy sought is legal.

Two courts have identified the remedy in cases like this one as the stripping of corporate protection, rather than monetary damages.  See In re Hillsborough Holdings Corp. v. Celotex Corp., Case. No. 90-163-MISC-T-15, 1992 U.S. Dist. LEXIS 22714, at *5

17

(M.D. Fla. Sept. 15, 1992); Towe v. Martinson, 151 B.R. 262, 264 (Bankr. D. Mont. 1993). The Court declines to follow this view. Common sense tells the Court that no party seeks to pierce the corporate veil merely to strip a company of its corporate protection; the underlying purpose of a veil-piercing claim in a lawsuit seeking the determination of damages is to obtain monetary relief.

The Court acknowledges that the Seventh Circuit Court of Appeals reached the opposite conclusion in International Financial Services. That case, however, is distinguishable. The Seventh Circuit Court of Appeals relied heavily on a discussion of Illinois law in reaching its decision. Under Illinois law, "piercing of the corporate veil on an alter ego theory is available only where failing to provide such relief would promote injustice or *inequity*." 356 F.3d at 737 (emphasis added). The trial court exercises considerable discretion in whether to pierce the corporate veil, and piercing the veil does not result in monetary damages. See id. Taking into account these considerations, the Seventh Circuit Court of Appeals held that veil-piercing is an equitable remedy. Id. The Seventh Circuit, however, noted that "this conclusion might not be reached under the law of another state." Id.

New Jersey law is far more ambiguous on this subject. The Supreme Court of New Jersey has set out the broad principles of

18

piercing the corporate veil in this state:

> Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil. The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law.
>
> Under certain circumstances, courts may pierce the corporate veil by finding that a subsidiary was "a mere instrumentality of the parent corporation." Application of this principle depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent. Even in the presence of corporate dominance, liability generally is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.

<u>N.J. Dep't of Envtl. Prot. v. Ventron Corp.</u>, 94 N.J. 473, 500-01 (N.J. 1983) (citations omitted). There is no statement of whether the remedy does or does not result in monetary damages. Contrary to Illinois law, there is no indication in <u>Ventron</u> or elsewhere that trial courts in New Jersey are vested with the discretion of when to pierce the corporate veil. Because New Jersey law does not state that piercing the corporate veil is discretionary, the analysis performed by the Seventh Circuit in <u>International Financial Services</u> is not analogous.

Furthermore the statement of the doctrine in <u>Ventron</u> suggests a fact-sensitive determination. "[A]s a practical matter separate from Seventh Amendment considerations, whether or not those factors . . . that will justify ignoring the corporate form and imposing liability on affiliated corporations or

19

shareholders are present in a given case is the sort of determination usually made by a jury because it is so fact specific." Passalacqua, 933 F.2d at 137 (citing Phillip I. Blumberg, The Law of Corporate Groups: Tort, Contract, and Other Common Law Problems in the Substantive Law of Parent and Subsidiary Corporations, § 7.02.2, at 144 (1997)); see also Blumberg, supra, at § 7.02.2, 80 (2003 Supp.) ("The jury should ordinarily determine the issue of piercing the corporate veil, unless there is no evidence sufficient to justify disregard of the corporate form.").

Although the Court's conclusion is not without doubt, the Court finds that the doctrine of piercing the corporate veil is a legal remedy entitling Defendants to a jury trial. Accordingly, the Court denies Defendants' motion to strike the jury demand for Count II of the complaint and the counterclaims.

### III. Conclusion

For the reasons above, the Court concludes that the Defendants are entitled to a jury trial on both counts of the complaint and both counterclaims. Accordingly, the Court **denies** Plaintiffs' motion to strike the jury demand.

An appropriate Order follows.

 /s/ William G. Bassler
WILLIAM G. BASSLER, U.S.S.D.J.

Dated: August 5, 2005