NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

In re:

G-I HOLDINGS, INC. f/k/a GAF CORPORATION,

Debtor.

**OPINION**

Civil No. 02-3626 (WGB)

G-I HOLDINGS, INC. f/k/a GAF CORPORATION and BUILDING MATERIALS CORPORATION OF AMERICA,

Plaintiffs,

v.

RUDDLES A. BENNET, JR. et al.,

Defendants.

Bankr. Case Nos.
01-30135 (RG)
01-38790 (RG)
(Jointly Administered)

**APPEARANCES:**

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
By: Dennis J. O'Grady, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

WEIL, GOTSHAL & MANGES LLP
By: Martin J. Bienenstock, Esq.
Kathryn L. Turner, Esq.
Ralph I. Miller, Esq.
Debra L. Goldstein, Esq.
John B. Kinchen, Esq.
767 Fifth Avenue
New York, New York 10153

Counsel for Plaintiffs and Counter-Defendants

SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
By: David R. Gross, Esq.
Nancy A. Washington, Esq.
Whitney R. Chelnik, Esq.
One Gateway Center, 13th Floor
Newark, New Jersey 07102

KEATING, MUETHING & KLEKAMP, P.L.L.
By: Kevin E. Irwin, Esq.
Michael L. Scheier, Esq.
Douglas Hensley, Esq.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

Counsel for the Legal Representative of Present and Future Holders of Asbestos-Related Demands

LOWENSTEIN SANDLER, PC
By: John K. Sherwood, Esq.
Rose E. Ramsay, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

CAPLIN & DRYSDALE, CHARTERED
By: Elihu Inselbuch, Esq.
299 Park Avenue, 27th Floor
New York, New York 10022

CAPLIN & DRYSDALE, CHARTERED
By: Trevor W. Swett, Esq.
Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, DC 20005

Counsel for the Official Committee of Asbestos Claimants

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiffs, G-I Holding Inc. ("G-I"), a debtor in bankruptcy proceedings, and its nonbankrupt subsidiaries filed an adversary proceeding seeking a declaration that the subsidiaries could not be held liable for asbestos-related claims under successor liability or alter ego theories. On July 6, 2005, this Court

dismissed the Legal Representative of Present and Future Holders of Asbestos-Related Demands ("Legal Representative")from the action finding that his involuntary participation in the matter is not statutorily authorized and would be an abuse of his role. Plaintiffs bring the current motion requesting the Court to direct entry of that order ("July 6 Order") as final or, in the alternative, certify the order for interlocutory appeal.

The Court properly exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and (e). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

For the reasons set forth below, the Court denies Plaintiffs' motion.

**I. Background**

Plaintiff G-I, the successor to GAF Corporation, is a holding company, which filed for Chapter 11 bankruptcy on January 5, 2001. (First Amended Complaint ("First Am. Compl.")¶¶ 2,5). GAF was a building materials company that produced asbestos products. GAF has been named in 500,000 asbestos lawsuits and G-I remains liable for approximately 150,000 claims that have been filed and for unknown numbers of asbestos claims that will be filed in the future. Due to the massive liability it faced, G-I claims that it was forced to file for bankruptcy. (Id. ¶ 4).

G-I is the parent company of Plaintiffs Building Materials Corporation of America, Building Materials Investment Corporation

and Building Materials Manufacturing Corporation (collectively "BMCA"). BMCA is a leading manufacturer of roofing and building products. Established in 1994, BMCA received substantially all assets of GAF's products business and expressly assumed $204 million of asbestos liability with G-I indemnifying BMCA against additional asbestos liability. In re G-I Holdings, Inc., 323 B.R. 583, 588 (Bankr D.N.J. 2005) (citing In re G-I Holdings, Inc., 313 B.R. 612, 621 (Bankr. D.N.J. 2004)). Approximately 2,500 state law actions were filed pre-petition against BMCA alleging asbestos-related claims under theories of "successor liability" and/or "alter ego" between G-I and BMCA (First Am. Compl. ¶ 3).

Shortly after G-I filed for chapter 11 bankruptcy protection, the United States trustee appointed the Official Committee of Asbestos Claimants (the "Committee") to represent present asbestos claimants or individuals exposed to G-I's asbestos products pre-petition who had manifested an asbestos related injury prior to plan confirmation. The Bankruptcy Court later appointed C. Judson Hamlin as the Legal Representative to protect the interests of those individuals currently unknown to the parties that have not yet manifested an asbestos-related injury but may hold future claims.

On February 7, 2001, Plaintiffs filed an action seeking a declaration that BMCA was not liable for asbestos claims under

successor liability and/or alter ego theories. Plaintiffs initiated the suit against six individual asbestos claimants ("Individual Defendants")[1] on behalf of themselves and all others similarly situated, including all future asbestos claimants. (Id. at 1). The Bankruptcy Court granted the Committee's request to intervene in November 2001. In October 2002, Plaintiffs amended their complaint to drop the class action allegations and to add the Legal Representative as a defendant. The Legal Representative then moved for a judgment on the pleadings, claiming that Plaintiffs were not entitled to relief because: "1) BMCA may not use the Declaratory Judgment Act to obtain a preemptive declaration of non-liability based on state law defenses; 2) the action does not involve a controversy of sufficient immediacy; and 3) Plaintiffs may not seek relief under the Declaratory Judgment Act because Congress has enacted a statute that provides for the specific relief requested." In re G-I Holdings, Inc., 328 B.R. 691, 694 (D.N.J. 2004).

In the meantime, the Committee commenced an avoidance action in the Southern District of New York alleging that G-I's

[1]The Individual Defendants are Ruddles A. Bennett, Jr., Earl J. Barrow, Anthony S. Barbera, Jennie Barbera, Gene R. Campbell and Vera L. Campbell. Five of these defendants have died *pendente lite*. Mr. Bennet is the only surviving original defendant. Before G-I filed for bankruptcy, the Individual Defendants filed separate lawsuits against G-I and BMCA, among others, in the state courts of Louisiana, New York and Georgia. (First Am. Compl. ¶¶ 14-17).

predecessor effected a fraudulent transfer of assets to its shareholders, including Samuel Heyman. In May 2003, over G-I's strenuous objection, the Bankruptcy Court granted the Legal Representative's motion to intervene in the Committee's avoidance action against Mr. Heyman. In re G-I Holdings, Inc., 292 B.R. 804, 815 (Bankr. D.N.J. 2003).

In its July 6 Order, this Court ruled in favor of the Legal Representative solely on ground three, finding that the forced participation of the Legal Representative is not statutorily authorized and will distort the statutory function of the Legal Representative provided under 11 U.S.C. § 524(g). 328 B.R. at 691. The Court rejected the argument that the Bankruptcy Court's decision allowing the Legal Representative to intervene in the New York avoidance case "confer[s] upon Plaintiffs the power to conscript the Legal Representative as an unwilling defendant in this action." 328 B.R. at 696. The Court reasoned that, because the Legal Representative is a creation of 11 U.S.C. § 524(g), he has no role in this "essentially . . . nonbankruptcy action to determine whether BMCA, a non-debtor, carries successor liability from G-I and is therefore liable to asbestos claimants." Id. It further held that Plaintiffs' attempt to bypass the safeguards provided under Federal Rule of Civil Procedure 23 by dismissing its class action claims and § 524(g), which each protect the rights of future claimants, was a violation of due process.

Plaintiffs now ask the Court to certify as a final judgment or certify for interlocutory appeal its ruling that the Legal Representative is an inappropriate party in this matter so that Plaintiffs may immediately obtain appellate review of the Court's decision.

## II. Discussion

### A. Rule 54(b)

The Court of Appeals has jurisdiction to review only "final decisions" of the district court under 28 U.S.C. § 1291. In re Diet Drugs Products Liability Litigation, 401 F.3d 143 (3d Cir. 2005). Although an order that disposes of fewer than all claims or the rights and liability of fewer than all parties is normally not appealable, an exception to the general rule exists when an order is certified as appealable by a district court pursuant to Federal Rule of Civil Procedure Rule 54(b). Id. at 162. Rule 54(b) permits the district court to separate final decisions from non-final decisions in multiple party or multiple claim litigation to allow for immediate appeal. Id. (citing Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 363 (3d Cir. 1975)). Rule 54(b) provides in part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In deciding whether to certify judgment on fewer than all claims presented in a multiclaim or multi-party action, a district court must address two distinct issues: first, whether it is dealing with a final judgment in the sense that it is an ultimate disposition of a specific claim in a multi-claim action or a specific party in a multi-party action and if so, the court then must exercise its discretion to determine that the matter is ready for appeal. Sussex v. Kanasco, Ltd., 920 F.2d 1150 (3d Cir. 1990)(citing Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 2, 7 (1980)). Since neither party disputes that the July 6 Order dismissing the Legal Representative was final for the purposes of Rule 54(b) analysis, the Court must analyze only the second issue, whether the judgment is ready for appeal. See Legal Representative's Memorandum ("Legal Rep. Mem.") at n.6; Plaintiffs' Memorandum ("Pls. Mem.") at 12-13.

Once finality is established, a district court then must determine whether the judgment is ready for appeal, or put differently, whether there is any just reason for delay. In deciding whether there is no just reason to delay appeal a district court must balance considerations of judicial administrative interests as well as the equities involved. Curtiss-Wright Corp., 446 U.S. at 8. To make this determination, the Third Circuit in Allis Chalmers Corp., 521 F.2d at 360, identified several factors that the district court should

consider: 1) the relationship between the adjudicated and non-adjudicated claims; 2) the possibility that the need for review might be mooted by future developments; 3) the possibility that the reviewing court might be obliged to consider the same issue a second time; 4) the presence or absence of a claim or counterclaim that could result in set-off against the judgment sought to be made final; and 5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of the trial, frivolity of competing claims, expense and the like. Depending on the facts of the particular case, all or some of the above may impact the district court's discretion to certify a judgment as final under Rule 54(b). Waldorf v. Shuta, 142 F.3d 601, 609 (3d Cir. 1998). Plaintiffs argue that the potential for duplicative trials and inconsistent verdicts along with the wasted resources that would be expended on a retrial weigh in favor of granting Plaintiffs' motion. The Court finds, however, that the potential need for a second trial is outweighed by other relevant judicial administrative interests and the equities involved.

First, certifying the July 6 Order as final will serve only to delay the trial as discovery has been completed, the pretrial order is close to finalization and the trial has been scheduled to begin April 3, 2006. In Panichella v. Pennsylvania Railroad Co., 252 F.2d 452, 455 (3d Cir. 1958), the Third Circuit ruled

that certifying a third-party claim as final was inappropriate at the stage of the case where certification would delay the trial of the principal claim without in any way either simplifying or facilitating its future litigation.[2] See also Emerson v. Wetherill, No. CIV. A. 92-4082, 1995 WL 94793, at *1 (E.D. Pa. 1995)(denying 54(b) certification where discovery was closed, the case was ready to go to trial and a stay of proceedings would delay final disposition of the remaining claims for many months). As Plaintiffs correctly point out, the July 6 Order "does not relate to any of the theories of successor liability or alter ego at issue in this case" (Pls. Mem. at 13-14), thus, granting Rule 54(b) certification now would only delay the declaratory judgment action without simplifying it or facilitating its progress.

Second, a ruling on the declaratory judgment action could moot the need to review the Court's July 6 Order. If it is determined that Plaintiffs are not entitled to a declaration that BMCA is not liable under the successor liability or alter ego theories, then there will be no need for the Court of Appeals to determine whether the Legal Representative can be a defendant in

---

[2]Additionally, the Court held that if the principal action would not be postponed pending an appeal of the third-party claim there would also be no colorable advantage of authorizing an appeal because the claimed advantage was the opportunity that in the event the appeal succeeds, the merits of the principal claim and the merits of the third party claim can be tried together. As the Legal Representative notes, Plaintiffs must be suggesting that a stay also is necessary. Legal Rep. Mem. at 11, n.7.

this action so that a decision granting relief to G-I would be binding on future claimants. Gerardi v. Pellulo, 16 F.3d 1363 (3d Cir. 1994)(reversing 54(b) certification where outcome of actions remaining before trial court might moot the need to review substantive issues on appeal); see also Sussex, 920 F.2d at 1156 (same); Panichella, 252 F.2d at 455 (potential for mootness was in itself "a distinct argument of substantial weight supporting the normal postponement of review until the entire case shall be decided").

Plaintiffs argue that in Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977)and Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999), the Third Circuit affirmed entry of judgment under Rule 54(b) to avoid the risk of duplicative trials, even though the appeals in those cases could have been mooted by outcomes at trial. Plaintiffs' Reply Memorandum ("Pls. Reply Mem.") at 5-9. In Bogosian, however, the Third Circuit reasoned that although a decision on the claim pending at trial could moot the question presented on appeal, a decision on the pending claim might take a number of years to reach. 561 F.2d at 443. In Carter, the Third Circuit was concerned primarily with whether the district court's failure to expressly state its reasons for entering judgment under Rule 54(b) required the Third Circuit to remand the action back to the district court, even though the propriety of the appeal was clearly discernable from

the record. 181 F.3d at 346-47. The Court ruled that there was no just reason for delay because 1) the issue presented was plainly separable from the others remaining to be adjudicated, 2) there was no real risk of duplicative appeals and 3) a denial of an immediate appeal could pose a substantial risk of duplicative trials. The Third Circuit discussed only those three factors and did not address the mootness issue.

The facts of those two cases are distinguishable from the present case. In the first place, the declaratory judgment action is scheduled for trial for April 3, 2006, not in "a number of years" as in the Bogosian case. Moreover, based on the particular situation of this case, the Court finds that, as in the Panichella case, mootness is a distinct argument of substantial weight because the declaratory judgment action will be tried in less than four months, and a judgment adverse to G-I would relieve the Court of Appeals of spending strained judicial resources on an issue that it need not have considered. 252 F.2d at 455.

Plaintiffs' additional contention that entering the July 6 Order as final "implicates important questions that not only impact this Adversary Proceeding but also the Chapter 11 Case and other adversary proceedings" actually cuts against granting Rule 54(b) certification. Pls. Mem. at 17. Certifying the July 6 Order as final could stay other proceedings and potentially halt

the progress of other litigation in which Plaintiffs are involved. See e.g., Committee Memorandum ("Comm. Mem.") at 21-22 ("the Committee's ability to prosecute the Securitization Claims is being held hostage to a final resolution of the instant case on the merits").

In addition, Plaintiffs' argument that the July 6 Order impacts other proceedings to the "extent it concludes that the Legal Representative's role is limited to matters involving section 524(g)" is misleading. Pls. Mem. at 15-16. Contrary to Plaintiffs' assertion, the July 6 Order did not "limit[] the role of the legal representative," much less do so in a way that "directly impacts the extent to which the legal representative [can protect] the due process rights and interests of future claimants." Id. at 17. This Court's narrow ruling was that "the forced participation of the Legal Representative in the Successor Liability Action is not statutorily authorized and would be an abuse of his role." 328 B.R. at 698. Even if an immediate appeal of that ruling were authorized, the Third Circuit would not have jurisdiction to opine broadly about its potential implications on hypothetical "future claimants' recoveries and the contour of G-I's chapter 11 plan" as Plaintiffs suggest. Pls. Mem. at 17.

Finally, the circumstances of this case do not justify the discretionary departure from the normal policy of avoiding

piecemeal appeals. The disfavoring of piecemeal appeals is a longstanding policy of the federal courts. Sussex, 920 F.2d at 1153. The Legal Representative appropriately notes that this Court dismissed Plaintiffs' claims against the Legal Representative on only one of three grounds. Legal Rep. Mem. at 15. Even if the Court of Appeals reversed the Court's decision on that ground, the Legal Representative likely would pursue the other two grounds for dismissal, requiring the court to visit the role of the Legal Representative a second time. See Gerardi, 16 F.3d at 1372 ("A district court should be conservative in invoking Rule 54(b) to certify a judgment as final because if an aggrieved party appeals following the certification, the district court effectively will be electing to control the docket of a court of appeals.")

Rule 54(b) was designed to remedy the harsh effects that could result from a delayed appeal in litigation presenting multiple parties or multiple claims. Sussex, 920 F.2d at 1153. It attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Cemar, Inc. v. Nissan Motor Corp., 897 F.2d 120 (3d Cir. 1990)(citing Allis-Chalmers, 521 F.2d at 363)). The Court is not convinced that Plaintiffs will suffer any hardship or injustice if an appeal of the Court's dismissal of the Legal Representative is delayed

until the declaratory judgment action is complete. Allis-Chalmers, 521 F.2d at 366 ("in the absence of unusual or harsh circumstances, presence of a counterclaim, which would have resulted in a set off . . . weighed heavily against granting certification"); see also Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999 (3d Cir. 1992) (party seeking final certification has burden to convince the district court that the case is an "infrequent harsh case" meriting a favorable exercise of discretion);[3] Cf. Bogosian, 561 F.2d 434 (certifying judgment as final where Defendants would bear uncertainty arising from fact

---

[3]Plaintiffs suggest that the Supreme Court, in Curtiss-Wright Corp., 446 U.S. at 10, rejected any court's consideration of the "harsh" "unusual" or "exceptional" nature of a case in making a Rule 54(b) determination. Pls. Reply Mem. at 2-3. Plaintiffs misinterpret the Court's holding. The Court expressly stated that "the phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review." 446 U.S. at 10 (emphasis added). The Court of Appeals had determined that the possibility of a set off should have led the district court to deny entry of final judgment unless petitioner could show harsh or unusual circumstances. The Supreme Court criticized the Court of Appeals for using the "infrequent harsh case" language as a standard to substitute its own assessment of the equities and facts of a case for that of the district court's where the district court's ruling was juridically sound and supported by the record. The Court further held that a district court should be given "substantial deference" and that a reviewing court should disturb the district court's "assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable." Id. The Court did not rule that it was improper for courts to consider whether the party seeking Rule 54(b) certification had shown that the case was the type of case meriting a favorable exercise of discretion. This interpretation of the Court's ruling is further made clear by the Third Circuit's continued use of the "infrequent harsh case" language. See e.g., Anthuis, 971 F.2d at 999.

that they may be forced to defend massive litigation years in the future). Instead, granting Rule 54(b) certification could result in a delay of the declaratory judgment action for many months or possibly years, which also could delay other litigation in which Plaintiffs are involved, elicit additional piecemeal appeals and waste the Court of Appeal's time on an issue that may become moot thereby causing needless expenses. Judicial administrative interests and the equities involved weigh in favor of denying the motion to direct entry of final judgment of the Court's July 6 Order.

**B. § 1292(b)**

In the alternative, Plaintiffs request that the Court certify its order for interlocutory appeal. See 28 U.S.C. § 1292(b). Certification under § 1292(b) is proper if the Court's order 1)involves a controlling question of law, 2)offers substantial ground for difference of opinion as to its correctness and 3) if appealed immediately, would materially advance the ultimate termination of the litigation. Forsyth v. Kleindiest, 599 F.2d 1203, 1208 (3d Cir. 1979)(citing Milbert v. Bison Lab., Inc., 260 F.2d 431,433 (3d Cir. 1958)). Like Rule 54(b), "§ 1292(b) is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals." Automated Data Sys., Inc. v. Omron Bus. Sys. Inc., 760 F.Supp.

541 (W.D.N.C. 1991). As the Third Circuit noted, however, Rule 54(b) and § 1292(b) are meant for two very different situations and must be "carefully distinguished in application." Ford Motor Credit Co. v. S.E. Barnhart, 664 F.2d 377, 380 (3d Cir. 1981)("If an order can be made appealable by a Rule 54(b) certificate, it, and not a § 1292(b) certificate, should be sought."). Section 1292(b) applies only to orders that would be considered interlocutory. See 10 Wright, Miller and Kane, Federal Practice and Procedure, Civil 2d § 2654 at 80 (1983). Rule 54(b) applies only to adjudications that would be final under Section 1291 if they occurred in an action having the same limited dimensions. Id. Therefore, as a general matter, if an order is inherently final, "[s]ection 1292(b) cannot apply and resort must be had to Rule 54(b) in the multiple party . . . situation." Automated Data Sys., Inc., 760 F.Supp. at 544 (quotations omitted). Arguably, § 1292(b) is inapplicable to this case because the July 6 Order is final. See Legal Rep. Mem. at n.6; Pls. Mem. at 12-13.

Even if § 1292(b) does apply, the Court finds that certifying its July 6 Order for interlocutory appeal would not materially advance the ultimate termination of the litigation. As discussed above, appellate review of the July 6 Order will serve only to delay the trial. See supra at 9-10. Discovery has concluded, the pretrial order is close to finalization and the

trial is scheduled to begin in less than four months. All three elements must be satisfied, before a court may properly certify a question for interlocutory appeal under § 1292(b). Ahrenholz v. Bd. of Trs. of the Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000). Plaintiffs cannot meet all three requirements, therefore, certification under § 1292(b)is denied.

**III. CONCLUSION**

For the reasons stated in this Opinion, this Court denies the motion to direct entry of the Court's July 6 Order as final or, in the alternative, certify the Order for interlocutory appeal.

An appropriate Order accompanies this Opinion.

/s/ William G. Bassler
WILLIAM G. BASSLER, U.S.S.D.J.

Dated: December 7, 2005