NOT FOR PUBLICATION

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| In re:<br><br>G-I HOLDINGS, INC. f/k/a GAF CORPORATION,<br><br>　　　　Debtor. | **OPINION**<br><br>Civil No. 02-3626<br>　　(WGB) |
| G-I HOLDINGS, INC. f/k/a GAF CORPORATION and BUILDING MATERIALS CORPORATION OF AMERICA,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>RUDDLES A. BENNET, JR. <u>et</u> <u>al.</u>,<br><br>　　　　Defendants. | Bankr. Case Nos.<br>　01-30135 (RG)<br>　01-38790 (RG)<br>(Jointly Administered) |

**APPEARANCES:**

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
By:  Dennis J. O'Grady, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

WEIL, GOTSHAL & MANGES LLP
By:  Martin J. Bienenstock, Esq.
　　　Kathryn L. Turner, Esq.
　　　Ralph I. Miller, Esq.
　　　Debra L. Goldstein, Esq.
　　　John B. Kinchen, Esq.
767 Fifth Avenue
New York, New York 10153

　　　Counsel for Plaintiffs and Counter-Defendants

```
SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
By:  David R. Gross, Esq.
     Nancy A. Washington, Esq.
     Whitney R. Chelnik, Esq.
One Gateway Center, 13th Floor
Newark, New Jersey 07102

KEATING, MUETHING & KLEKAMP, P.L.L.
By:  Kevin E. Irwin, Esq.
     Michael L. Scheier, Esq.
     Douglas Hensley, Esq.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

     Counsel for the Legal Representative of Present and Future
     Holders of Asbestos-Related Demands

LOWENSTEIN SANDLER, PC
By:  John K. Sherwood, Esq.
     Rose E. Ramsay, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

CAPLIN & DRYSDALE, CHARTERED
By:  Elihu Inselbuch, Esq.
299 Park Avenue, 27th Floor
New York, New York 10022

CAPLIN & DRYSDALE, CHARTERED
By:  Trevor W. Swett, Esq.
     Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, DC 20005

     Counsel for the Official Committee of Asbestos Claimants
```

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiffs, G-I Holding Inc. ("G-I"), a debtor in bankruptcy proceedings, and its nonbankrupt subsidiaries, filed an action seeking a declaration that the subsidiaries could not be held liable for asbestos-related claims under successor liability or alter ego theories. Plaintiffs now move the Court to certify for

2

interlocutory appeal its August 5, 2005 order ("August 5 Order") denying Plaintiffs' motion to strike Defendants' jury demand.

The Court properly exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and (e). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

For the reasons set forth below, the Court denies Plaintiffs' motion.

## I. BACKGROUND

### A. General History

Plaintiff G-I, the successor to GAF Corporation, is a holding company, which filed for Chapter 11 bankruptcy on January 5, 2001. (First Amended Complaint ("First Am. Compl.") ¶¶ 2,5). GAF was a building materials company that produced asbestos products and has been named in 500,000 asbestos lawsuits. GAF and G-I have paid over $750 million to asbestos plaintiffs over the past seven years. G-I remains liable for approximately 150,000 claims that have been filed and for unknown numbers of asbestos claims that will be filed in the future. Due to the massive liability it faced, G-I claims that it was forced to file for bankruptcy. (Id. ¶ 4).

G-I is the parent company of Plaintiffs Building Materials Corporation of America, Building Materials Investment Corporation and Building Materials Manufacturing Corporation (collectively "BMCA"). BMCA is a leading manufacturer of roofing and building

products.  Established in 1994, BMCA received substantially all assets of GAF's products business and expressly assumed $204 million of asbestos liability with G-I indemnifying BMCA against additional asbestos liability.  In re G-I Holdings, Inc., 323 B.R. 583, 588 (Bankr D.N.J. 2005) (citing In re G-I Holdings, Inc., 313 B.R. 612, 621 (Bankr. D.N.J. 2004)).  Approximately 2,500 state law actions were filed pre-petition against BMCA alleging asbestos-related claims under theories of "successor liability" and/or "alter ego" between G-I and BMCA (First Am. Compl. ¶ 3).

   Shortly after G-I filed for chapter 11 bankruptcy protection, the United States trustee appointed the Official Committee of Asbestos Claimants (the "Committee") to represent present asbestos claimants or individuals exposed to G-I's asbestos products pre-petition who had manifested an asbestos related injury prior to plan confirmation.  The Bankruptcy Court later appointed C. Judson Hamlin as the Legal Representative to protect the interests of those individuals currently unknown to the parties that have not yet manifested an asbestos-related injury but may hold future claims.

   On February 7, 2001, Plaintiffs filed an action seeking a declaration that BMCA was not liable for asbestos claims under successor liability and/or alter ego theories.  Plaintiffs initiated the suit against six individual asbestos claimants

4

("Individual Defendants")[1] on behalf of themselves and all others similarly situated, including all future asbestos claimants. (Id. at 1). The Bankruptcy Court granted the Committee's request to intervene in November 2001. In October 2002, Plaintiffs amended their complaint to drop the class action allegations and to add the Legal Representative as a defendant. On July 6, 2005, this Court granted the Legal Representative's motion for judgment on the pleadings, effectively dismissing the Legal Representative as a defendant. In re G-I Holdings, Inc., 328 B.R. 691 (D.N.J. 2005). Plaintiffs have separately moved this Court to certify that order for immediate appeal as well.

The Individual Defendants filed their Answer to the First Amended Complaint with their Jury Demand on November 14, 2002. The Committee filed its Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial in Response to the First Amended Complaint on November 18, 2002. The Committee's counterclaims sought a declaration that the BMCA entities were successors in liability to all of the asbestos related claims against G-I and GAF and that the corporate veil of BMCA should be

---

[1]The Individual Defendants are Ruddles A. Bennett, Jr., Earl J. Barrow, Anthony S. Barbera, Jennie Barbera, Gene R. Campbell and Vera L. Campbell. Five of these defendants have died *pendente lite*. Mr. Bennet is the only surviving original defendant. Before G-I filed for bankruptcy, the Individual Defendants filed separate lawsuits against G-I and BMCA, among others, in the state courts of Louisiana, New York and Georgia. (First Am. Compl. ¶¶ 14-17).

disregarded. Defendants demanded a jury trial on both counts of the complaint and the counterclaims. Plaintiffs moved to strike the jury demand.

**B. Dispute Between the Parties**

Defendants asserted that they have a constitutional right to a trial by jury under the Seventh Amendment of the United States Constitution. Plaintiffs disagreed arguing that the successor liability and alter ego/veil piercing claims and remedies for those claims were equitable in nature and therefore, the Constitutional right to a jury trial for claims that are legal in nature did not attach. The Court applied the analysis set forth by the Supreme Court in Grafinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), to determine whether Defendants enjoy a Seventh Amendment right to a jury trial. In re G-I Holdings, Inc., 380 F. Supp. 2d 469 (D.N.J. 2005). The Granfinanciera analysis requires a court to conduct a two-part test to determine (1) whether the claims historically had been brought in courts of equity or law and (2) whether the remedy sought is legal or equitable. 492 U.S. at 42. This Court concluded that, although successor liability is historically an equitable doctrine, since Defendants would be seeking monetary damages-a legal remedy-had they initiated the lawsuit, Defendants have a right to a jury trial. With regard to the alter-ego/veil piercing claims, the Court recognized the dual legal and equitable origins of that

doctrine, but likewise concluded that "piercing the corporate veil is a legal remedy entitling Defendants to a jury trial." 380 F. Supp. 2d at 478.

Plaintiffs bring this motion seeking to have the Court certify its order for interlocutory appeal.

**II. DISCUSSION**

Under 28 U.S.C. § 1292(b), a district judge may certify an order for interlocutory appeal if it finds that a matter (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and that (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Even if § 1292(b) criteria are present, permission to appeal is wholly within the discretion of the district courts.  Harter v. GAF Corp., 150 F.R.D. 502 (D.N.J. 1993) (citing Bachowski v. Usery, 545 F.2d 363, 368 (1976)).  In exercising its discretion, the district court must be mindful of the strong policy against piecemeal appeals.  Titelman v. Rite Aid Corp., No. Civ. A. 00-2865, 2002 WL 32351182, at *1 (E.D. Pa. Feb. 5, 2002); see also Link v. Mercedes-Benz of N. Am., 550 F.2d 860, 863 (3d Cir. 1976) ("We cannot sanction an erosion of the prohibition against 'piecemeal' appellate review."), cert denied, 431 U.S. 933 (1977).

The statute was created as a means by which courts could, under a limited set of circumstances, avoid problems caused by

7

the final judgment rule.  Harter, 150 F.R.D. at 517 (citing Max Daetwyler Corp. v. Meyer, 572 F.Supp. 280, 282 (E.D. Pa. 1983)). Section 1292(b) should be "sparingly applied" and used only in exceptional circumstances.  Milbert v. Bison Labs., 260 F.2d 431, 433 (3d Cir. 1958).  It is not intended to open the "floodgates to a vast number of appeals from interlocutory orders."  Id.

The district court should certify an order for immediate appeal only if all three requirements identified in § 1292(b) are met.  Orson v. Miramax Film Corp., 867 F.Supp. 319 (E.D. Pa. 1994) (citing Piazza v. Major League Baseball, 836 F.Supp. 269, 271 (E.D. Pa. 1993)).  Moreover, the burden is on the movant to demonstrate that all three requirements have been satisfied. Orson, 867 F.Supp. at 320.

**A.  Controlling Question of Law**

Plaintiffs have met their burden of proving that the right to a jury trial is a controlling question of law.  The Third Circuit has held that a controlling question of law "must encompass, at the very least, every order which, if erroneous, would be reversible error on final appeal."  Katz v. Carte Blanche Corp., 469 F.2d 747, 755 (3d Cir. 1974).  The Court added that the legislative history of the statute suggests that a matter is also controlling if it is "serious to the conduct of the litigation, either practically or legally."  Id.  It noted that saving the time of the district court and the expense of the

8

litigants are highly relevant factors to be considered. Additionally, resolution of the issue need not be determinative of any claim on the merits, and a possible reversal of the relevant order need not terminate the litigation. Id.

In Zenith Radio Corp., the Third Circuit recognized that an erroneous granting of a jury trial could constitute reversible error. Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 478 F.Supp. 889 (E.D. Pa. 1979), *vacated sub nom*, In re Japanese Elec. Prods. Antitrust Litig., 631 F.2d 1069 (3d Cir. 1980)(citing Hurwitz v. Hurwitz, 136 F.2d 796 (D.C. Cir. 1943)). Although several courts have refused to certify a right to jury trial issue, the Court found no case law holding that the right to a jury trial is not a controlling question of law. For instance, in City of Hope Nat'l Med. Ctr. v. Blue Cross of Cal., 928 F.Supp. 1001, 1004 (C.D. Cal. 1996), the court refused to certify a right to jury trial issue on the basis that there was no substantial grounds for a difference of opinion, but noted that the right to a jury trial is a fundamental right, which involved a controlling question of law. See also Howard v. Parisian, Inc., 807 F.2d 1560, 1567 (11th Cir. 1987) (finding "no basis for concluding that a substantial ground for difference of opinion exists as to whether [plaintiff] is entitled to a jury trial" and finding "[no] reason why an immediate appeal of the order is necessary to advance materially the termination of the

9

litigation under § 1292(b)"). Based on the applicable case law, Plaintiffs have satisfied the first element required for certification.

### B. Substantial Grounds for a Difference of Opinion

Plaintiffs also have met their burden of proving that substantial grounds for a difference of opinion exist, at least with regard to the piercing the corporate veil issue. This Court noted in its August 5 Opinion that there is a Circuit Court split with regard to the piercing the corporate veil claim and stated that its determination on this issue "is not without doubt." In re G-I Holdings, Inc., 380 F. Supp. 2d at 476, 478. Defendants argue that no substantial grounds for a difference of opinion exist because there is no "real difference of opinion regarding the legal standard" to be applied. Committee Memorandum of Law ("Comm. Mem.") at 11 (citing McNeil v. Aquilos, 820 F.Supp. 77 (S.D.N.Y. 1992)). Defendants suggest that the test to determine whether substantial grounds for a difference of opinion exist concerns only the legal standard and not the application of the legal standard. The Court disagrees.

Defendants correctly assert that a party's mere disagreement with a Court's application of a legal standard is insufficient to show that substantial grounds for a difference of opinion exist. Comm. Mem. at 13 (citing First American Corp. v. Al-Nahyan, 948 F.Supp. 1107, 1116-17 (D.D.C. 1996)). Where other courts,

10

however, have substantially differed in applying the legal standard, substantial grounds for a difference of opinion exist. See Plaintiffs' Reply Memorandum of Law ("Pls. Reply Mem.") at 7 (citing Harter, 150 F.R.D. at 518)). As both this Court (380 F. Supp. 2d at 476, 478) and the Committee (Comm. Mem. at 12) have acknowledged that a split of authority exists regarding the piercing the corporate veil claim, the Court finds that substantial grounds for a difference of opinion exist.

With regard to the successor liability claim, however, the Court does not find that a substantial ground for a difference of opinion exists. Unlike the piercing the corporate veil issue, there has been no authority split regarding whether the successor liability theory is legal or equitable in nature. The only Appellate Court addressing this issue failed to explicitly conduct the Granfinanciera analysis. Ed Peters Jewelry Co. v. C & J Jewelry Co., 215 F.3d 182, 186 (1st Cir. 2000). In addition, the Third Circuit has held that the mere fact that an issue is one of first impression alone does not create a substantial ground for a difference of opinion. In re Sharps Run Assoc., 157 B.R. 766, 779 n.6 (D.N.J. 1993). The most important element of the Granfinanciera analysis-the nature of the remedy sought (492 U.S. at 42)-weighs strongly in favor of a determination that the remedy Defendants would have sought had they initiated the underlying successor liability action is legal. Therefore, there

11

is no substantial grounds for a difference of opinion regarding the successor liability claim.

### C. Materially Advance the Termination of the Litigation

Although Plaintiffs may be able to show that the right to a jury trial is a controlling question of law and substantial grounds for a difference of opinion exist, at least with regard to one claim, Plaintiffs must also show that the appeal "may materially advance the ultimate termination of the litigation." Harter, 150 F.R.D. at 518. Although the moving party is not required to demonstrate that an interlocutory appeal would certainly expedite the case, she should advance something more than mere conjecture that certification would substantially reduce time and expense. Zygmuntowicz v. Hospitality Inv., Inc., 828 F.Supp. 346 (E.D.Pa. 1993)(citing In re Magic Marker Sec. Lit., 472 F.Supp. 436, 438-39(D.C. Pa. 1979)).

In Hulmes v. Honda Motor Co., LTD., 936 F.Supp. 195 (D.N.J. 1996), the Court refused to certify its order for interlocutory appeal reasoning that the case already had been proceeding in the court for three years, discovery "finally" had been concluded and certification would result in postponement of the trial, which had been scheduled, indefinitely. Similarly, trial has been proceeding in this Court for the past five years, discovery has been completed, the pretrial order is close to finalization and trial is scheduled to begin April 3, 2006, less than four months

12

away.  FDIC v. Parkway Executive Office Ctr., Nos. Civ A. 96-121, 96-122, 1997 WL 611674, at *3 (E.D. Pa. Sept. 24, 1997)("It has generally been recognized that where discovery is complete and a case is ready for trial, an interlocutory appeal can hardly advance the ultimate termination of the litigation"); see also Rottmund v. Continental Assurance Co., 813 F.Supp. 1104, 1112 (E.D. Pa. 1992); Hulmes, 936 F.Supp. at 212 ("delay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial.").[2]

Additionally, in analyzing whether an immediate appeal would materially advance the ultimate termination of the litigation, the District Court in the Eastern District of Pennsylvania has considered whether the appeal would (1) obviate the need for trial; (2) eliminate complex issues thereby greatly simplifying the trial; or (3) eliminate issues thus making discovery much easier and less costly.  Zygmuntowicz, 828 F.Supp. at 353 (citing In re Magic Marker Sec. Lit., 472 F.Supp. at 438-39)).  Applying those three factors to this case, the Court finds that a trial will still be necessary even if the Court's decision is reversed on appeal; a determination regarding the right to jury trial will

---

[2] A review of Third Circuit cases reveals that the time from the district court's certification or the appellate court's allowance of appeal in § 1292(b) cases to the decision may approach or exceed one year.  Also, if the Court of Appeals grants rehearing en banc, or the Supreme Court grants certiorari, delay would be considerably greater.  Piazza, 836 F.Supp. at 271.

13

not eliminate any complex issues that would simplify the trial; and discovery cannot be made easier or less costly as it has already been completed.  P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 355 (D.N.J. 2001) (holding that immediate appeal would not materially advance termination of litigation where trial would not be avoided); see also Breeden v. Transocean Offshore Ventures, Inc., No. Civ. A. 00-2561, 2001 WL 125343, at *1 (E.D. La. Feb. 14, 2001) (finding that certifying order concerning right to jury trial would not materially advance ultimate termination of case where only the trier of fact would be different and case would still have to proceed to trial); Orson, 867 F.Supp. at 322 ("[S]ince discovery has already concluded . . . an immediate appeal would not make discovery easier or less costly.").

Plaintiffs' main argument is that an interlocutory appeal will prevent "undue delay" caused by a retrial, in the event the Court of Appeals reversed the Court's August 5 Order.[3] Plaintiffs' Memorandum of Law ("Pls. Mem.") at 14.  Plaintiffs

---

[3] Plaintiffs further cite In re Owens Corning, No. 04-4080, 2005 WL 1939796, at *1 (3d Cir. Aug. 15, 2001), to support an argument that the Third Circuit applies a "'relaxed standard' of finality in the bankruptcy context."  Pls. Mem. at 15.  Although In re Owens Corning is another asbestos bankruptcy litigation, the holding in that case has no bearing on this case.  The Third Circuit held that as a general rule, a bankruptcy court order substantively consolidating different estates is a "final order," from which an appeal will lie as of right.  The Court did not address when an interlocutory order should be certified under § 1292(b).

14

rely on <u>Zenith Radio Corp</u>, 478 F.Supp. at 944, to support this assertion.  <u>Id.</u>  In <u>Zenith Radio Corp.</u>, Judge Becker held that even though "further delay of the trial" of a nine-year-old case might result from granting certification, it was more beneficial to obviate the possibility of a "year-long" jury trial.  <u>Id.</u>  This case, however, is distinguishable from <u>Zenith Radio Corp.</u>  First, the Court in <u>Zenith Radio Corp.</u>, held that there was sufficient time for the court of appeals to dispose of the matter before the scheduled trial date, which had been set for nine months after the Court's decision.  The trial for this case has been set for April 3, 2006, less than four months away.  Second, discovery has concluded and the pretrial order is nearing completion.  Third, a year-long jury trial is not expected in this case.

Moreover, the possibility of a second trial is not the sole standard by which the third § 1292(b) requirement is weighed.  <u>Titelman</u>, 2002 WL 32351182, at *3.  A second trial would not be necessary if, as Plaintiffs acknowledge, the Court bases its findings on the trial record (Pls. Mem. at 14); <u>see</u> <u>also</u> <u>Hurwitz</u>, 136 F.2d at 799 (ruling that a court may use as an advisory aid a jury verdict on equitable issues in making its own findings of fact).  And of course the Court will not even be faced with that possibility if the Third Circuit affirms a verdict adverse to G-I.

Even assuming that Plaintiffs have met their burden of showing that the right to a jury trial is a controlling question of law and that substantial grounds for a difference of opinion exist regarding the right to a jury trial in this action, Plaintiffs have failed to meet their burden of proving that certifying the Court's August 5 Order for interlocutory appeal would materially advance the ultimate termination of the litigation.  With the trial only a few months away, discovery being completed, and a pretrial order being close to finalization, the Court denies Plaintiffs' motion to certify its August 5 Order.

### III.  CONCLUSION

For the reasons stated in this Opinion, this Court denies the motion to certify the question regarding the right to jury trial for interlocutory appeal.


An appropriate Order accompanies this Opinion.


                                    /s/ William G. Bassler
                                  WILLIAM G. BASSLER, U.S.S.D.J.

Dated: December 7, 2005