**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>G-I HOLDINGS, INC., et al.,<br><br>       Debtor. | Civil No. 02-3626 (SRC) |
| G-I HOLDINGS, INC. et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>RUDDLES A. BENNET, JR. et al.,<br><br>       Defendants. | Bankr. Case Nos.<br>01-30135 (RG)<br>01-38790 (RG)<br>(Jointly Administered)<br><br><br>**OPINION** |

**CHESLER, District Judge**

     In the midst of a massive bankruptcy, debtor G-I Holdings Incorporated ("G-I") and its non-bankrupt subsidiaries, Building Materials Corporation of America ("BMCA"), Building Materials Investment Corporation ("BMIC"), Building Materials Manufacturing Corporation ("BMMC"), and BMCA Holdings, Incorporated ("BMCA Holdings") (collectively "Plaintiffs"), seek a declaratory judgment that BMCA, BMIC, and BMMC cannot be held liable for the asbestos-related claims brought against G-I under any theory of successor liability or "alter ego."

     This matter comes before the Court on two related motions.  First, a Motion to Determine

Governing Law filed by Plaintiffs.  [Docket item 162].  Defendant Official Committee of

Asbestos Claimants ("the Committee") filed opposition to this motion.  Plaintiffs also filed a

Submission Regarding the Appropriateness of Declaratory Relief.  [Docket item 163].  In

response, the Committee filed a Motion for Judgment on the Pleadings as to Plaintiffs' First

Amended Complaint for Declaratory Judgment.  [Docket item 171].  Plaintiffs filed a reply brief,

and the Committee filed a sur-reply.

In March of 2007, the parties requested a stay of the proceeding and withdrew the

pending motions without prejudice while they attempted to negotiate settlement.  The parties

failed to reach settlement, and in February 2008, the parties submitted a notice of termination of

the consensual stay.  On March 18, 2008, the Committee filed notice of resubmission of the

previously withdrawn motions.

For the following reasons, the Court declines to exercise jurisdiction over this matter,

**GRANTS** the Committee's motion for judgment on the pleadings, and **DISMISSES** as moot the

Plaintiffs' motion to determine governing law.


I.     BACKGROUND

The focus of this declaratory judgment action is a reorganization, characterized by the

Committee as a "push-down," undertaken by G-I prior to commencement of bankruptcy

proceedings.  G-I, the debtor, is a holding company owned principally by Samuel Heyman.  The

somewhat tortured history of G-I, its subsidiaries, the bankruptcy proceedings, and the present

litigation is set forth below.

### A.      History of G-I and GAF Corporation

GAF Corporation was created in 1968, when General Aniline & Film Corporation merged with the Ruberoid Company.  Ruberoid manufactured and distributed asbestos containing products including Calsilite, an insulation material.  After the merger, GAF divided the company's operations into two divisions: the chemicals divisions, which operated chemical plants, and the building materials division, which operated roofing plants, fiber plants, and one glass plant.

Samuel Heyman acquired control of GAF through a proxy fight in 1983.  In 1986, GAF incorporated GAF Building Materials Corporation ("GAF BMC") and GAF Chemicals Corporation as wholly-owned subsidiaries, transferring the roofing business to the former and the chemicals business to the latter.  In 1989, GAF and its subsidiaries were liquidated by way of a complex leveraged buyout.  The end result of the transaction was the creation of a new GAF Corporation with Samuel Heyman as the principal owner.

The new GAF Corporation created a wholly owned subsidiary known as G-I Holdings, Incorporated and another wholly owned subsidiary known as G-I Holdings Corporation.  GAF BMC and GAF Chemicals Corp. continued to operate as subsidiaries of G-I Holdings, Inc., G-I Holdings Corp., and GAF;  however, the new GAF BMC contractually assumed 100 percent of the liabilities of the old GAF Corporation, including asbestos liabilities.

In 1991, International Speciality Products ("ISP") was incorporated as a subsidiary of GAF Chemicals Corp. and received all of GAF Chemical Corp.'s assets in exchange for stock. In 1991, as a result of the previously described actions, the corporate structure was as follows: GAF Corporation  held 100 percent of G-I Holdings Corporation, which held 100 percent of G-I

Holdings Incorporated, which held 100 percent of GAF BMC, the building materials operating company, and 80.6 percent of ISP, the chemical business operating company.

In 1994, GAF Corporation carried out another restructuring – the "push-down" transaction, which is the subject of the present declaratory judgment action.  In this restructuring, GAF BMC transferred all of the assets of its building and roofing products business to BMCA, a separate and wholly-owned subsidiary, in exchange for 100 percent of BMCA's stock.   In addition, BMCA expressly assumed $204 million of asbestos liability with G-I and GAF indemnifying BMCA against additional asbestos liability.  According to the Committee, this transaction unfairly insulated BMCA from asbestos related liability.  G-I disputes this characterization of the restructuring and argues that the restructuring was necessary in order to ensure access to capital markets and to enable BMCA to obtain low-cost, unsecured financing.  BMCA's payments exhausted the $204 million contractual share approximately three years after the restructuring.

On January 1, 1997, GAF divested itself of the stock of ISP, the chemicals subsidiary, by distributing to GAF shareholders 100 percent of the capital stock of ISP.  Heyman received approximately 96 percent of the shares, and the minority shareholders of GAF received the remaining 4 percent.  At ISP's closing price on December 31, 1996, the stock that GAF disposed of in the transfer was worth about $1 billion, $988,391,250, of which Heyman received directly or indirectly.  This transfer severed the parent/subsidiary relationship between GAF and ISP.[1]

---

[1]In September 2001, the Committee commenced an action against Samuel Heyman in the United States District Court for the Southern District of New York, alleging that the 1997 ISP spin-off constituted a fraudulent conveyance and seeking to avoid the spin-off and recover the ISP stock for the bankruptcy estate. *See Official Comm. of Asbestos Claimants v. Heyman*, 342 B.R. 416, 419 (S.D.N.Y. 2006).  That action is still pending.

In 1999, the corporate structure was as follows: Samuel Heyman held 99% of GAF Corporation, which held 100% of G-I Holdings Incorporated, which held 100% of GAF Fiberglass Corporation, which held 100% of GAF BMC, which held 97% of BMCA Holdings, which held 99.4% of BMCA.  In October 2000, GAF Corporation merged with G-I Holdings Incorporated, GAF Fiberglass, and GAF BMC, with the surviving entity taking the name G-I Holdings Incorporated ("G-I").  G-I is the debtor in the underlying bankruptcy proceeding and is the direct parent of BMCA Holdings, which in turn owns BMCA, one of the Debtor's primary operating subsidiaries.  BMMC and BMIC are, in turn, two subsidiaries of BMCA.

### B.     Bankruptcy of G-I and the Present Litigation

On January 5, 2001, G-I commenced its voluntary petition for reorganization under Chapter 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (2000).  G-I now operates as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  G-I claims that it was forced to file for bankruptcy due to an increase in both the number of asbestos claims filed against G-I and the settlement amounts demanded by asbestos claimants.

On January 18, 2001, the United States Trustee in the underlying bankruptcy case appointed the Committee, pursuant to 11 U.S.C. § 1102, to represent the interests of persons asserting tort claims against G-I, as successor to GAF Corporation, for alleged injuries caused by asbestos-containing products.[2]  The Committee represents individuals whose pre-petition claims

---

[2]The class of persons represented by the Committee is referred to in this opinion as the "Individual Claimants."

remain pending during the bankruptcy and individuals who file claims during the Chapter 11

case.  The bankruptcy court later appointed C. Judson Hamlin as Legal Representative to protect

the interests of those individuals currently unknown to the parties that have not yet manifested an

asbestos-related injury, but who may hold future claims.

As noted previously, the Debtor, G-I, is a holding company which owns 98.5% of the

non-debtor BMCA Holdings, which in turn owns 99.9% of BMCA.  BMCA, a Delaware

Corporation, is a leading national manufacturer of roofing products with sales of $1.96 billion in

2005.  BMCA, as a non-debtor, is not a party to the bankruptcy proceeding.[3]  Beginning in late

2000, asbestos plaintiffs began naming BMCA as an additional defendant in lawsuits against

GAF based on theories of successor liability or alter ego.  G-I asserts that there were

approximately 2,500 state law actions filed pre-petition alleging asbestos related claims against

BMCA.

On February 7, 2001, in response to the claims filed against BMCA, Plaintiffs filed an

adversary proceeding in the bankruptcy court seeking a declaratory judgment that BMCA,

BMMC, and BMIC are not successors to the asbestos liability of G-I and that the subsidiaries are

not alter egos of G-I.  *G-I Holdings v. Bennett*, No. 01-30135 (Bankr. D.N.J. 2001).  Plaintiffs

initiated the suit against six individual asbestos claimants[4] ("Named Defendants") on behalf of

---

[3]The Committee requested that the bankruptcy court substantively consolidate G-I and
BMCA for the purposes of G-I's bankruptcy or, in the alternative, requested injunctive relief
compelling G-I to cause BMCA to file its own Chapter 11 petition.  The bankruptcy court denied
the motion.  *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc.*, Nos. 01-30135, 01-
3065, 2001 WL 1598178, at *14 (Bankr. D.N.J. Apr. 6, 2001).

[4]The Named Defendants are Ruddles A. Bennett, Jr., Earl J. Barrow, Anthony S. Barbera,
Jennie Barbera, Gene R. Campbell, and Vera L. Campbell.  Five of these Defendants have died
*pendente lite.*  Mr. Bennett is the only surviving original Defendant; he has not filed any papers

–6–

themselves and all others similarly situated, including all future asbestos claimants.  The

bankruptcy court granted the Committee's request to intervene in November 2001.  In addition to

its answer and affirmative defenses, the Committee asserted counterclaims seeking a declaratory

judgment that BMCA was liable under theories of successor liability and piercing the corporate

veil.

In October 2002, Plaintiffs amended their complaint to drop the class action allegations

and to add the Legal Representative as a defendant.  The amended complaint, like the initial

complaint, seeks a judgment "declaring that BMCA, BMIC, and/or BMMC are not liable for

Asbestos Claims under any theory of successor liability" and "declaring that BMCA, BMIC,

and/or BMMC are not liable for Asbestos Claims based on a theory that BMCA, BMIC, and/or

BMIC are the 'alter ego' of either G-I, GAF BMC, and/or GAF Corporation."  Am. Compl. at 11.

The amended complaint defines "Asbestos Claims" as "thousands of lawsuits alleging personal

injury, wrongful death, or property damage from the alleged exposure to or the presence of

asbestos and/or asbestos containing products," as well as "thousands of potential defendants

[who] may assert claims in the future alleging personal injury, wrongful death, or property

damage from the alleged exposure to or the presence of asbestos and/or asbestos containing

products."  Am. Compl. at 2.

The Court exercised jurisdiction over this matter on May 13, 2003, by granting the

Committee's request to withdraw the reference from the bankruptcy court with respect to this

adversary proceeding.  *G-I Holdings, Inc. v. Bennett*, No. 02-3626, docket item 6 (D.N.J. May

13, 2006).

_____

on the current motions.

–7–

On July 6, 2005, this Court granted the Legal Representative's motion for judgment on the pleadings, dismissing the Legal Representative as a defendant. *In re:G-I Holdings, Inc. v. Bennett*, 328 B.R. 691 (D.N.J. 2005).  The Court found that the forced participation of the Legal Representative is not statutorily authorized and would distort the function of the Legal Representative provided under 11 U.S.C. § 524(g) ("§ 524(g)").  *Id.* at 691.  The Court reasoned that, because the Legal Representative is a creation of § 524(g), he has no role in this "essentially . . . nonbankruptcy action to determine whether BMCA, a non-debtor, carries successor liability from G-I, and is therefore liable to asbestos claimants."  *Id.* at 696.  The Court further held that Plaintiffs' attempts to bypass the safeguards provided under § 524(g) and Federal Rule of Civil Procedure 23, each of which protect the rights of future claimants, was a violation of due process. *Id.* at 697.

The Court scheduled the case for trial in April 2006, and the parties submitted the final pretrial order on November 7, 2005.  The Committee listed, as two of the legal issues presented: "[w]hether in the circumstances and posture of this case there is any valid statutory basis (i) to grant a declaratory judgment that BMCA, BMMC, and BMIC have no liability for Asbestos Claims under any theory of successor liability or alter ego, or (ii) to bind absent claimants," as well as the "[c]hoice of law with respect to Plaintiffs' claims regarding successor liability and alter ego."  On April 12, 2006, the Court held a status conference and requested briefing on these two legal issues.  On May 10, 2006, the Plaintiffs filed their "Submission Regarding the Appropriateness of Declaratory Relief" and their "Motion to Determine Governing Law."  In response, the Committee filed a Motion for Judgment on the Pleadings as to Plaintiffs' First Amended Complaint for Declaratory Judgment and filed an opposition to the motion to

determine governing law.  Plaintiffs filed reply briefs on both issues, and the Committee filed a

sur-reply regarding the appropriateness of declaratory relief.

## II.    DISCUSSION

There are presently two motions pending before the Court: (1) the Committee's motion

for judgment on the pleadings as to Plaintiffs' complaint for declaratory judgment; and (2)

Plaintiffs' motion to determine governing law.  Because, for the reasons set forth below, the

Court grants the Committee's motion for a judgment on the pleadings and declines to exercise its

jurisdiction over this declaratory judgment action, the Court finds it unnecessary to make a

determination on Plaintiffs' motion to determine governing law.[5]

As discussed above, Plaintiffs' amended complaint seeks a judgment "declaring that

BMCA, BMIC, and or/ BMMC are not liable for Asbestos Claims under any theory of successor

liability" and "declaring that BMCA, BMIC, and/or BMMC are not liable for Asbestos Claims

based on a theory that BMCA, BMIC, and/or BMIC are the 'alter ego' of either G-I, GAF BMC,

and/or GAF Corporation."  Am. Compl. at 11.  Defendant, the Committee, has moved for

judgment on the pleadings on the following grounds: (1) § 524 (g) of the Bankruptcy Code

preempts Plaintiffs' request for declaratory relief; (2) present and future claimants would not be

bound by any declaratory judgment; (3) an alleged tortfeasor is precluded from utilizing the

declaratory judgment act to obtain a universal declaration of non-liability; and (4) the Court

should exercise its discretion and decline jurisdiction over this declaratory judgment action.

---

[5]However, as more fully discussed below, the intricacy of the choice of law issue plays a
large role in the Court's choice to exercise its discretion and decline to exercise jurisdiction over
this declaratory judgment action.

For the reasons set forth below, the Court is persuaded by the Committee's second and fourth arguments and finds that it would not be an appropriate exercise of this Court's jurisdiction to entertain this declaratory judgment action.  Because the Court exercises its discretion and declines jurisdiction over this matter, the Court does not consider the Committee's other arguments.

### A.   Legal Standard

The Declaratory Judgment Act ("The Act"), 28 U.S.C. §§ 2201 and 2202, vests the federal courts with jurisdiction to "declare the rights and other legal relations of any interested party seeking such a declaration."  28 U.S.C. § 2201 (2000).  The purpose of the Act is to enable a person who faces a "real and substantial" legal risk, which is "of sufficient immediacy and reality," (*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 771 (2008)) "to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side."  *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993).  However, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).  The Supreme Court has noted that because the Act provides that a court "'*may* declare the rights and other legal relation of any interested party,'" the plain text of the Act gives a court "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (quoting § 2201(a)); *see also State Auto Ins. Co. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (explaining the Act contemplates "that district courts will exercise discretion in determining whether to entertain such actions").  The Act has been

–10–

characterized as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287.  Thus, although vested with jurisdiction under the Act, district courts are under "no compulsion to exercise that jurisdiction," *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942), and instead are given broad and selective discretion in determining whether and when to entertain a declaratory judgment action. *See MedImmune*, 549 U.S. at 776-77.

In assessing actions for declaratory judgment, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.  Generally, the court's decision should be guided by the purposes of the Act, and federal courts should not permit a declaratory judgment action to be used as a "'method of procedural fencing, or as a means to provide another forum in a race for res judicata.'" *Terra Nova Ins. Co. v. 900 Bar. Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989) (quoting 6A James Wm. Moore et al., *Moore's Federal Practice* § 57.08[5], at 57-50 (2d ed. 1987)).  Both the Supreme Court and the Third Circuit have set forth factors to guide a district court in determining whether to entertain a declaratory judgment action.

Most commonly, courts decline to entertain a declaratory judgment action because of pendency of state proceedings.  While a district court may proceed with a declaratory judgment action if it presents issues that cannot adequately be addressed in state court, *United States v. Pa. Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991), courts should decline to grant declaratory relief when such relief "would impinge on a state proceeding . . . [or] result in a conflict between the decisions of state and federal courts." *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 544 (3d Cir. 1974).  In determining whether to proceed despite pending state court action, a

federal court should consider: (1) the scope of pending state court proceedings; (2) whether the claims can adequately be adjudicated in the state proceeding; (3) the presence of issues of federal law; and (4) the presence of unsettled issues of state law.  *See Brillhart*, 316 U.S. at 495-96.  The critical question is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."  *Id.* at 495.

In addition to the *Brillhart* factors, the Third Circuit has set out the following guidelines for the exercise of discretion under the Act: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies," as well as (5) promotion of judicial economy and the avoidance of duplicative litigation; and (6) improper procedural fencing.  *Terra Nova Ins.*, 887 F.2d at 1224; *see also Pa. Dep't of Envtl. Res.*, 923 F.2d at 1075.  In addition, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions."  *Summy*, 234 F.3d at 135.  The district court's discretionary power to decline to hear declaratory judgment actions, however, is not open-ended, and a district court should not exercise this discretion "when the issues include[] federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding."  *Id.* at 134.

In determining to decline to exercise jurisdiction over the present controversy, this Court is guided by the factors provided by the Supreme Court and the Third Circuit.  These factors address three main areas of analysis.  *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383,

390-91 (5th Cir. 2003) (discussing the various circuits' expressions of the *Brillhart* factors, each of which addresses the same three aspects of the analysis).

The first aspect of the inquiry is fairness. The Third Circuit's analysis in this area has focused on the use of the declaratory judgment for procedural fencing, but additional fairness concerns specific to the present case must be addressed as well. Specifically, the Court must examine whether the use of the Committee as a defendant to obtain a binding judgment on the Individual Claimants comports with due process. A related, but distinct issue is whether a declaratory judgment action of this nature provides proper procedural protection for absent litigants.

The second aspect of inquiry is the proper allocation of decision making between state and federal courts, as encompassed by the Supreme Court's analysis in *Brillhart*. The Third Circuit has also expressed concern that federal courts refrain from entertaining declaratory judgment actions where the state law is unsettled.

The third aspect of this analysis is efficiency and the promotion of judicial economy. The Third Circuit has advised district courts to focus on the avoidance of duplicative litigation, the ability of the declaratory judgment to resolve the uncertainty of obligation, the convenience of the parties, and the availability of alternative remedies. As discussed more fully below, the application of these factors to the present situation leads this Court to conclude that it would be inappropriate to exercise jurisdiction over this declaratory judgment action.

**B.      Factors in Exercising Discretion: Fairness Concerns**

1.      <u>Forum Shopping/ Anticipatory Litigation</u>

The purpose of the Declaratory Judgement Act is to provide "an opportunity for a party to a ripe legal controversy to have that controversy resolved by a Court promptly rather than waiting for the opposing party, with the ripe substantive right to sue, to choose to exercise its rights to judicial intervention, particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff." *Great Am. Ins. Co. v. Houston General Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990).  In considering whether to exercise jurisdiction over a declaratory judgment action, "'[c]ourts look with disapproval upon any attempt to circumvent the laudable purposes of the Act, and seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata.'" *Terra Nova*, 887 F.2d at 1225 (quoting *Moore's*, § 57.08[5]).  While avoiding multiple lawsuits in multiple courts is a legitimate reason for bringing a declaratory judgment action, *Travelers*, 996 F.2d at 776-777, 779, it seems the main reasons that Plaintiffs brought this action was to circumvent the choice of forum of the Named Plaintiffs and Individual Claimants, as well as to influence the law applicable to the successor and alter ego liability issues.  Because these reasons are not consistent with the purpose of the Act, this factor counsels against this Court exercising its discretion.

G-I's declaratory judgment action, filed after thousands of state court lawsuits were filed, does not constitute the anticipatory filing present in the traditional race-to-the-courthouse scenario that is frowned upon by the courts.  Nonetheless, G-I filed its declaratory judgment action for the very same reason that parties engage in a race to the courthouse – to evade the forum choice of its opposing party and to obtain a favorable forum for its claims.  Instead of litigating successor and alter ego liability in the thousands of individual state lawsuits brought by

the Individual Claimants, G-I instituted this single federal court action to "establish for once and

for all that BMCA bears no liability to current and future asbestos claimants based on its

relationship with G-I and its affiliates."  Pl. Consolidated Reply at 2.  This constitutes classic

"forum shopping" and counsels against this Court entertaining the declaratory judgment action.

Further, while declaratory judgment actions often involve the permissible selection of a

federal forum over an available state forum, courts have declined to entertain such actions where

it appears the plaintiff used the declaratory judgment action with the purpose of controlling the

state law that would apply.  *See, e.g.*, *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599

(5th Cir. 1983) (declining to exercise jurisdiction where the plaintiff sought declaratory judgment

in anticipation of the defendant initiating a state court action in order to control the state law that

would apply).

Here, it appears to the Court that G-I was attempting to influence the applicable law

through its choice of forum.  Plaintiffs argue that, were the Court to entertain this declaratory

judgment action, federal choice of law rules would apply and that those rules dictate that

Delaware law controls the alter ego and successor liability claims.  While the Court does not find

it necessary to resolve the choice of law issue, it is sufficient to note that entertaining this

declaratory judgment action would require the Court to apply one set of choice of law principles

to the entire action, encompassing thousands of state court lawsuits.  In contrast, were the

individual state lawsuits to move forward, each Individual Claimant would have the opportunity

to independently litigate, under the laws of their chosen forum state, the choice of law issue.  It is

possible, if not likely, that the state courts entertaining the state lawsuits would reach differing

outcomes as to which law should apply to those plaintiffs' claims.  As a result, Plaintiffs' choice

to litigate all state lawsuits in a single federal forum would have a dramatic effect on the choice

of law analysis.  Because utilizing the declaratory judgment act to manipulate the law applying to

the action is not an appropriate use of the Act and indicates improper "procedural fencing," this

suggests the Court decline jurisdiction.  *Cf. Sherwin-Williams*, 343 F.3d at 399 (finding the

district court should entertain declaratory judgment action in part because "[t]he selection of the

federal forum in this case did not change the law that would apply").


2.     Ability of Defendant Committee to Bind Individual State Claimants

In addition to consideration of the fairness issues presented by the Plaintiffs' choice of

forum, the Court must examine whether it would comport with due process to allow a declaratory

judgment against the Committee to bind the Individual Claimants, who are not parties to this

action.  It certainly would not be an appropriate exercise of discretion for this Court to entertain a

declaratory judgment action in which the relief sought would violate the protections provided by

the Constitution.  *See, e.g.*, *Wilton*, 515 U.S. at 288 (explaining that "[i]n the declaratory

judgment context, the normal principle that federal courts should adjudicate claims within their

jurisdiction yields to considerations of practicality and wise judicial administration").

The Committee argues that because the present declaratory judgment action lacks the

procedural protections provided by either a § 524(g) channeling injunction or a Rule 23 class

action, to issue a judgment binding against the Individual Claimants would violate due process.

The Committee further asserts that its participation in these proceedings is not sufficient to bind

the Individual Claimants because it is not the agent of those claimants.  Plaintiffs disagree,

arguing that the Individual Claimants would be bound by any judgment entered against the

Committee because the Committee both actually and virtually represents its constituents, and because the Committee affirmatively intervened in the present proceeding.  The Court agrees with the Committee and finds that it would not comport with due process to allow a judgment entered against the Committee to bind the Individual Claimants.

The Individual Claimants are not parties to this lawsuit.  This action was originally initiated as a defendant class action against the Named Defendants on behalf of themselves and all others similarly situated, including all future asbestos claimants.  After the Committee intervened in the action, Plaintiffs amended their complaint to remove the class action allegations and to add the Committee and the Legal Representative.  These amendments were made with the belief that a declaratory judgment action against the Committee and the Legal Representative could bind all existing and future claimants.

It being a "deep-rooted historic tradition that everyone should have his own day in court," *Martin v. Wilks*, 490 U.S. 755, 762 (1989), the general rule is that "it is a violation of due process for a judgment to be binding on a litigant who was not party or a privy and therefore has never had an opportunity to be heard."  *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 327, n. 7 (1979). Because of this, "'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process[.]'"  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). *See also In re Asbestos Litigation*, 829 F.2d 1233, 1256 (3d Cir. 1987) (J. Hunter, III, dissenting) (citations omitted) (explaining "'[t]he requirement that a person against whom the conclusive effect of a judgment is invoked must be a party or a privy to the prior judgment . . . has been repeatedly affirmed'").

–17–

Under this general rule, any declaratory judgment issued by this Court would not be binding on the Individual Claimants because they are not parties to the current suit. However, courts "'have recognized an exception to this general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party,' or 'where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate[.]'" *Ortiz*, 527 U.S. at 846 (quoting *Martin*, 490 U.S. at 762 n. 2). The burden of demonstrating the existence of such an exception rests with the Plaintiffs. *Id.*

The current declaratory judgment proceeding is not a "special remedial scheme" that would allow the Court to enter a judgment binding on non-parties. To the contrary, Plaintiffs instituted this action to avoid two remedial schemes – a Rule 23 class action or a § 524(g) channeling injunction – either of which would allow them to seek the requested relief while also providing procedural protections for the absent Individual Claimants. *In re: G-I Holdings*, 328 B.R. at 697 (noting that G-I instituted the declaratory judgment action to avoid § 524(g)). "To maintain a class action, a party must satisfy the prerequisites of Rule 23(a) and come within one provision of Rule 23(b) in order to ensure that binding absent class members comports with notions of fairness and due process." *Id.* (citing *In re Gen'l Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)). However, G-I, through its amended complaint, removed the class action allegations.

Plaintiffs have also opted not to seek a channeling injunction under § 524(g).[6] This

_____

[6]The Committee argues that §524(g) preempts Plaintiffs' request for declaratory relief. While the Court agrees with the Committee that it would violate due process to allow a declaratory judgment issued against the Committee to bind the Individual Claimants, the Court

section calls for the creation of a channeling injunction and trust that would cleanse the debtor corporation of its present and future asbestos liability while providing a source of funding to pay future claims. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004). However, to achieve this relief, a debtor must satisfy the prerequisites set forth in § 524(g), of which "there are many." *Id.* at 234, n.45 (describing statutory prerequisites imposed by § 524(g)); § 524(g)(2)(B), 4(B). The Third Circuit has noted these requirements "are specifically tailored to protect the due process rights of future claimants." *Id.* at 234, n.45. Plaintiffs have indicated that this declaratory judgment action is meant to avoid having to institute a Rule 23 class action or seek a § 524(g) channeling injunction. However, by doing so, Plaintiffs "essentially bypass[] the safeguards of both Rule 23 and § 524(g)." *In re G-I Holdings*, 328 B.R. at 697.

Instead, Plaintiffs argue that the "Committee both actually and virtually represents its constituents," and as such, it would comport with due process to allow a declaratory judgment entered against the Committee to bind the Individual Claimants. It appears that Plaintiffs are positing two separate justifications for its argument that the Committee may bind the Individual Claimants: (1) as part of its inherent powers; or (2) because the interests of the Committee and the Individual Claimants are so closely aligned. The Court is not persuaded by either argument.

The Committee is a statutory entity created pursuant to 11 U.S.C. § 1102. Under that section, the United States Trustee is required to appoint a committee of unsecured creditors in each Chapter 11 case. *See* 11 U.S.C. § 1102; 7 *Collier on Bankruptcy* ¶ 1102.01[1]. Under §

---

does not find the request for declaratory relief preempted by § 524(g). Instead the Court's holding rests on the inability of the present declaratory judgment action to provide proper procedural protections for the Individual Claimants. While a § 524(g) channeling injunction would be one method of providing such protections, the Court is not willing to conclude that it is the only available method.

1102(b)(1), the creditors' committee ordinarily consists of the holders of the seven largest

unsecured claims of the kind represented by the committee. *See* 11 U.S.C. § 1002(b)(1).  Here,

the members of the Committee are specific individuals holding unsecured claims against the

Debtor for asbestos-related personal injury or wrongful death claims.

Section 1102 of the Bankruptcy Code requires the creditors' committee to: provide access

to information for creditors represented by the committee; solicit and receive comments from the

creditors; and be subject to a court order compelling any additional disclosure to be made to the

creditors.  11 U.S.C. § 1102(b)(3).  Section 1103 of the Bankruptcy Code sets out additional

powers and duties of the creditors' committee: (1) ability to employ attorneys, accountants or

other agents; (2) consult with the trustee or debtor in possession about the administration of the

case; (3) investigate the financial condition of the debtor, the operation of the debtor's business,

and other matters relevant to the case; (4) participate in the formulation of a plan, consult with

the represented creditor's about such a plan, and file acceptances or rejections of the plan; (5)

request the appointment of a trustee or examiner under § 1104 of the Bankruptcy Code; and (6)

perform other such services as are in the interest of those represented.  11 U.S.C. § 1103 (a), (c).

In addition, Section 1109(b) gives creditors' committees the right to appear and be heard on any

issue arising within the Chapter 11 case.  11 U.S.C. § 1109(b).

The Court does not agree with Plaintiffs that the Committee's inherent powers include the

ability to be sued on behalf of its constituents.  The Court reaches this conclusion for three

reasons: (1) the lack of statutory authorization for such power; (2) inconsistency of this action

with the purpose of the creditors' committee; and (3) the well-established proposition that a

creditor's committee owes a fiduciary duty to the committee as a whole, not the individual

creditors.

First, although the Bankruptcy Code catalogues many powers and duties of creditors' committees, it does not explicitly permit a creditors' committee to be sued on behalf of its members. The only section which arguably provides such authority is § 1103(c)(5), which allows a creditors' committee to "perform such other services as are in the interest of those represented."[7] Conceivably, this section could be read to permit the institution of actions against the Committee, were such actions in the interest of those represented by the Committee. However, this Court is hard-pressed to see how this declaratory judgment action – brought to foreclose the ability of the Individual Claimants to recover against a non-debtor entity – is in the interests of those represented. As such, Section 1103(c)(5) does not provide statutory authorization for the Plaintiffs' argument.

Second, given the nature of this proceeding, it would be inconsistent with the purpose of a creditors' committee to permit a judgment against the Committee to bind Individual Claimants. The Committee is "a creature of bankruptcy law; it is created solely for the purpose of facilitating the bankruptcy process[.]" *In re: Dow Corning Corp.*, 199 B.R. 896, 903 (Bankr. E.D. Mich. 1996). Such a committee exists to "advise the creditors of their rights and the proper course of action in the Bankruptcy proceeding," *In re Continental Airlines, Inc.*, 57 B.R. 839, 841 (Bankr. S.D. Tex. 1985). Further, the powers and duties set forth by § 1102 and § 1103 relate exclusively to proceedings in bankruptcy. For these reasons a committee should be limited to

---

[7] The Third Circuit, along with other courts, have found that § 1103(c)(5) permits creditors' committees to initiate adversary proceedings, such as an avoidance action, if the debtor refuses to sue. *See, e.g.*, *Official Comm. of Unsecured Creditors of Cybergencis Corp. ex. rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003). It is apparent however, that the initiation of such a suit would almost certainly be "in the interests of those represented," as required by § 1003(c)(5), unlike the present declaratory judgment action.

taking actions in connection with the bankruptcy case.  *See* 7 *Collier on Bankruptcy* ¶ 1103.05[1][f] and [g] ; *see also In re Eagle-Pitcher Indus., Inc.*, 167 B.R. 102 (Bankr. S.D. Ohio 1994) (concluding that committee had exceeded its statutory authority by opposing delisting of the debtor's stock).

The current proceeding, "essentially a non-bankruptcy action to determine whether BMCA, a non-debtor, carries successor liability from G-I," *In re G-I Holdings*, 328 B.R. at 696, is at this point only tangentially related to the underlying bankruptcy.  Allowing the Committee's participation in this declaratory judgment action to bind the Individual Members would be an unwarranted extension of the Committee's intended function and contravene the purpose of such a committee.  *See, e.g.*, *In re Johns-Mansville Corp.*, 52 B.R. 879, 884 (Bankr. S.D.N.Y. 1985) *rev'd on other grounds by* 801 F.2d 60 (2d Cir. 1986) ("While § 1103 contemplates a committee taking an active role in the reorganization proceedings, it does not grant a committee blanket authority to represent its constituency in matters outside and independent of the bankruptcy case."); *In re: Dow Corning Corp.*, 199 B.R. at 903 (holding that creditors' committee may not engage in lobbying activities because such activities would be outside the bankruptcy case).

Third, it is well-settled that "a Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole, not to the individual members." *In re: Kensington Int'l Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) (citing *In re: Drexel Burnham Lambert Grp.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992)).  Because of this, while a creditors' committee "bears a strong duty to the interests of the unsecured creditors it represents, it has neither the power nor the authority to bind each individual creditor." *In re: Quality Beverage Co.*, 181 B.R. 887, 894 (Bankr. S.D. Tx. 1995).  For example, although creditors' committees are charged with negotiating a plan on

behalf of their constituencies, "the committee[s] do[] not have statutory authority to bind creditors to the acceptance of a plan proposal." *In re Donlevy's Inc.*, 111 B.R. 1, 2 (Bankr. D. Mass. 1990). Because the fiduciary duty of a creditor's committee does not extend to individual creditors, it would not be appropriate to allow a judgment against the Committee to be binding against individual creditors.

Nor would the doctrine of "virtual representation" allow Plaintiffs to bind the Individual Claimants by obtaining a declaratory judgment against the Committee. Plaintiffs argue, citing *In re Johns-Mansville Corp.*, that "where it appears that a particular party, although not before the court in person, is so far represented by others who are before the court that his interests receive actual and efficient protection, his actual joinder may be dispensed with, and the decree may be held to be binding on him." Pl. Consolidated Reply Br. at 9 (citing *In re Johns-Mansville Corp.*, 36 B.R. at 758-59 n.7).

This Court agrees with Judge Bassler, who rejected this argument in his opinion dismissing the Legal Representative from this proceeding. Plaintiffs had argued that the Legal Representative properly represented future claimants in the declaratory judgment action through the doctrine of equitable virtual representation. Judge Bassler found Plaintiffs' reliance on *Johns Mansville* "misplaced," because the *Johns-Mansville* court "ultimately rejected the guardian ad litem model and its concomitant ability to bind future claimants." *In re: G-I Holdings*, 328 B.R. at 697, 698 (citing *In re Johns-Mansville*, 60 B.R. 842, 845 (S.D.N.Y. 1986)). The *Johns-Mansville* court reached this conclusion by likening the legal representative's powers to those a committee wields under § 1103, which the court noted are "nonbinding." *In re Johns-Mansville Corp.*, 52 B.R. 940, 943 (S.D.N.Y. 1985). It is hard to see how *Johns-Mansville* could support

Plaintiffs' argument that a judgment against the Committee would bind the Individual Claimants when the *Johns-Mansville* court itself noted that under § 1103 a committee's powers are non-binding.

The inability of this proceeding to bind the Individual Claimants counsels strongly against this Court exercising its jurisdiction to hear this declaratory judgment action.


### C.       Factors in Exercising Discretion: Federalism Concerns

Ordinarily, a district court should refrain from exercising jurisdiction over a declaratory judgment action "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495.  This is because "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (citation omitted).

It is undisputed that there are numerous state proceedings alleging personal injuries stemming from asbestos liability currently pending between G-I and the Defendants.[8]  By Plaintiffs' own admission, "Plaintiffs initiated this action to establish once and for all that BMCA bears no liability to current and future asbestos claimants based on its relationship with G-I and its affiliates."  Pl. Consolidated Reply at 2.  To affect this goal, Plaintiffs sued the

---

[8] On February 22, 2002, the bankruptcy court entered an order preliminarily enjoining the prosecution of all pending and future actions seeking damages for alleged personal injuries arising out of asbestos exposure.  *G-I Holdings v. Singletary*, Adversary Proceeding No. 01-3013-RG (Bankr. D.N.J. Feb. 22, 2002).  As a result, all state proceedings between G-I and asbestos claimants are currently stayed.

following Defendants: (1) the Named Defendants; (2) the Committee; and (3) the Legal Representative. Each of the six Named Defendants had filed individual lawsuits against BMCA prior to G-I's bankruptcy in various state courts. These suits all allege that BMCA is liable for its predecessors' asbestos torts on state law theories of successor liability and/or alter ego. Am. Compl. at ¶¶ 14-17. The Committee represents the interests of all persons presently asserting tort claims against G-I, including persons asserting claims against BMCA under theories of successor liability and/or alter ego, referred to in this Opinion as the Individual Claimants.[9] As noted above, the Legal Representative, who represented future asbestos claimants, has been dismissed from this case. As a result, the current group of defendants in this case is entirely comprised of litigants prosecuting asbestos related claims against G-I.

However, the mere pendency of similar state court proceedings does not preclude a district court from granting relief. *Penn. Dep't of Env. Res.*, 923 F.2d at 1076. Rather, the district court must examine the adequacy and reach of the state proceedings. *Id.* In *Brillhart*, the Supreme Court set out a number of factors that a district court should consider in determining whether to proceed despite pending state court action, including: (1) the scope of pending state court proceedings; (2) whether the claims can adequately be adjudicated in the state proceeding; (3) the presence of issues of federal law; and (4) the presence of unsettled issues of state law. *Brillhart*, 316 U.S. at 495-96. The critical inquiry is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable

---

[9]At the time of the Chapter 11 filing, there were approximately 150,000 asbestos suits pending against G-I. It is not clear in exactly how many of these suits the issue of successor and/or alter ego liability has been raised. G-I claims that approximately 2,500 state law actions were filed pre-petition alleging asbestos related claims against BMCA under theories of successor or alter ego liability.

substantive law, can better be settled in the proceeding pending in the state court." *Id.* at 495.

The first *Brillhart* factor examines the scope of the state and federal proceedings, asking whether the issues and parties presented by the cases are the same.  Here, Plaintiffs' asserted goal was to obtain a binding declaratory judgment against each of their opponents in the pending state court actions.  Therefore, Plaintiffs sued only those defendants it believed were necessary to obtain a judgment binding against the state court litigants.  Although we have found that the Individual Claimants would not be bound by a declaratory judgment entered against the Committee, *see supra* Pt. B.2, for the purpose of the *Brillhart* analysis, the parties involved in the two actions are the same – G-I and BMCA on one side of the litigation and a state tort claimant on the other.

Furthermore, the issue presented for resolution before this Court, whether BMCA is responsible for G-I's asbestos liability, is the exact same issue presented in the pending state court litigations.[10]  This litigation does not encompass more issues than have been presented to the state courts.  *See Canal Ins. Co. v. Paul Cox Trucking*, No. 05-cv-2194, 2006 U.S. Dist. LEXIS 71307, at *8-9 (M.D. Penn. Oct. 2, 2006) (explaining that declaratory relief may be appropriate where federal action involves issues falling outside the purview of the state court proceeding).  In fact, the opposite is true.  While the only issue presented by the federal declaratory judgment action is that of successor liability, the individual state tort cases

_____

[10]As noted above, it is not clear to the Court how many of the Individual Claimants are currently asserting claims against BMCA under either successor or alter ego liability.  The group of state court claimants represented by the Committee appears to include state court claimants asserting claims against only G-I, as well as those asserting claims against BMCA and G-I.  In any event, the claimants currently asserting claims against only G-I could likely add claims against BMCA, so it is reasonable to assume that the issue of successor and alter ego liability is present, or could be present, in all pending state court cases.

encompass each plaintiff's entire case against G-I, including the issue of successor or alter ego liability.  Because of the overlap in parties and issues, this declaratory judgment action is sufficiently related to the pending state court proceedings as to weigh in favor of declining to exercise discretionary jurisdiction.

Next, the Court must examine the adequacy of the state proceedings.  Under this factor, the primary inquiry is whether Plaintiffs' claims "can satisfactorily be adjudicated in that proceeding."  *Brillhart*, 316 U.S. at 495; *Summy*, 234 F.3d at 134.  The only issue presented for resolution in this action is whether BMCA is liable for asbestos claims brought against G-I under the theories of successor or alter ego liability.  This issue is present in each case brought by an Individual Claimant and could certainly be raised by BMCA in those proceedings.  Plaintiffs have presented no reason why the issue of alter ego and successor liability, issues of state law, cannot be adequately adjudicated in state courts.  *Cf. Penn. Dep't of Env. Res.*, 923 F.2d at 1077 (finding pending state proceeding inadequate because the state action would not allow the United States to present its sovereign immunity defense).  Currently, all state court proceedings have been stayed by the bankruptcy court.  *G-I Holdings v. Singletary*, Adversary Proceeding No. 01-3013-RG (Bankr. D.N.J. Feb. 22, 2002).  The Court can see how this would suggest the inadequacy of the state court proceedings, however this stay was entered at the Plaintiff's request and would presumably be lifted at their request.  As such, this Court does not find the stay currently in place sufficient to render the state court proceedings inadequate.

Further, while the Third Circuit has cautioned that district courts should not "decline jurisdiction over a declaratory judgment action when the issues include[] federal statutory interpretation," the issues presented here are not governed by federal law.  *Summy*, 234 F.3d at 134.  *See also Brillhart*, 316 U.S. at 495.  Generally, issues of successor and alter ego liability are

matters of state law.  The fact that this proceeding originated as an adversary proceeding within a

bankruptcy does not change this conclusion, as this case presents no issues of bankruptcy law.

Instead, the underlying issue of successor and alter ego liability is governed by state law.  As a

result, the state courts before which the state actions are pending are "in a better position to

evaluate the factual issues because they rest[] solely on state law with which the state courts are

better acquainted."  *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 816 (6th

Cir. 2004).  Moreover, because no federal questions are presented, "no federal interests [would

be] promoted by deciding this case in the District Court."  *Summy*, 234 F.3d 131; *see also*

*Allstate Ins. Co. v. Best*, 728 F. Supp. 1263, 1269 (D.S.C. 1990) (explaining that there is "no

federal interest whatsoever in the[] ultimate resolution" of questions of state law presented in a

declaratory action).

Fourth, federal courts should hesitate in "exercising jurisdiction over declaratory

judgment actions when the state law involved is close or unsettled."  *Summy*, 234 F.3d at 135.

"In order to maintain the proper relationship between federal and state courts, it is important that

district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law

matters."  *Id.* at 136; *see also Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992) ("There

exists an interest in having the most authoritative voice speak on the meaning of applicable law,

and that voice belongs to the state courts when state law controls the resolution of the case.").

Plaintiffs argue that this factor weighs in their favor because under federal choice of law

principles,[11] well-settled Delaware law applies to the issues of alter ego and successor liability.

---

[11]In the alternative, Plaintiffs argue that even were this Court to utilize New Jersey choice
of law principles, Delaware law would apply to the issues of successor and alter ego liability.
*See* Pl. Br. Re. Appropriateness of Declaratory Relief at 17-33.

Pl. Br. Re. Appropriateness of Declaratory Relief at 10-16.  While the Court need not make a

determination as to which law applies, a brief discussion will serve to illustrate the complex and

unsettled nature of the issue, counseling against this Court entertaining this action.

Contrary to Plaintiffs' assertions, it is New Jersey choice of law principles, not federal

choice of law rules, which control the analysis in the present action.  *See In re Gaston & Snow*,

243 F.3d 599, 606-07 (2d Cir. 2001).  Under New Jersey choice of law analysis, the Court must

apply "the law of the state with the greatest interest in resolving the particular issue that is raised

in the underlying litigation."  *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (1996).  The first step of

the analysis is to determine whether an actual conflict exists between the laws of the respective

states.  *Id.*  If there is a conflict, the Court must "identify the governmental policies underlying

the law of each state and how those policies are affected by each state's contacts to the litigation

and to the parties."  *Id.*  In the present action, there are at least three possible sources of law: (1)

New Jersey, the forum state and Plaintiffs' principal place of business; (2) Delaware, Plaintiffs'

state of incorporation; and (3) the various jurisdictions where the Individual Claimants have

brought suit.  A conflict exists between these various states as to both the alter ego and successor

liability laws.[12]  Furthermore, given the governmental policies underlying the law of alter ego and

successor liability, these jurisdictions have very substantial competing interests.  Given that it is

unclear how a New Jersey court would resolve this conflict, the Court is reluctant to exercise its

discretion to entertain this declaratory judgment action.  This Court agrees that where "[t]he

---

[12]  For example, although both Delaware and New Jersey follow the "traditional"
exceptions to successor liability (express assumption, implied assumption, mere continuation, de
facto merger, and fraud), New Jersey recognizes two additional exceptions – the product line
exception and the continuity of enterprise exception – that Delaware and most other states do not.
*See Lefever v. K.P. Hovanian Enters., Inc.*, 160 N.J. 307, 326 (1999); *Ramirez v. Amsted Indus.,
Inc.*, 86 N.J. 332, 349-350 (1981).

–29–

questions of state law are close ones . . . . the relevant state interests. . . should [lead] the district court to exercise its statutorily provided discretion to decline to entertain [the] declaratory judgment action." *Mitcheson*, 955 F.2d at 236.

### D.      Factors in Exercising Discretion: Efficiency Concerns

The third aspect of this analysis is efficiency and the promotion of judicial economy. Here, the Third Circuit has advised district courts to focus on the avoidance of duplicative litigation, the ability of the declaratory judgment to resolve the uncertainty of obligation, the convenience of the parties, and the availability of alternative remedies.  In addition, the choice of law issue is relevant to a determination of whether entertainment of this declaratory judgment action would promote efficiency.  The application of these factors to the present situation leads this Court to the conclusion that it would be inappropriate for the Court to exercise its jurisdiction over this declaratory judgment action.

### 1.      This Declaratory Judgment Action Will Not Resolve Entire Controversy nor Prevent Duplicative Litigation

"Declaratory relief is appropriate when a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding."  12 *Moore's*, § 57.42[1] (3d. ed. 2000).  However, if the declaratory relief sought will not terminate the controversy giving rise to the proceeding, the court may exercise its discretion and decline to grant relief.  *See Armstrong World Indus. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992).  The Legal Representative has previously been dismissed from this matter.  *In re: G-I Holdings*, 328 B.R. at 698.

Therefore, any declaratory judgment entered in the present matter would not be binding on future claimants and the issues of successor and alter ego liability would need to be litigated in each case brought by a future claimant.  Also, as discussed above, *see supra* Pt. II.B.2., any declaratory judgment entered in this proceeding against the Committee would not be binding on the Individual Claimants.  Therefore, the issues being litigated in the current proceeding would need to be re-litigated in each state action brought by an Individual Claimant.  As a result, this action does not serve "a useful purpose in clarifying and settling the legal relations in issue."

### 2.    Convenience of Parties

It is also appropriate for the Court to consider "the convenience of the parties," in deciding whether to entertain this action.  *Penn. Dep't of Envir. Res.*, 923 F.2d at 1075.  It is certainly more convenient for Plaintiffs to litigate the issue of successor and alter ego liability in a single forum, rather than litigating the issue in thousands, if not tens of thousands, individual state court actions.  This forum is particularly convenient for Plaintiffs, given that its corporate headquarters is located in northern New Jersey.  It is equally clear, however, that for those very reasons, this forum is not very convenient for the Named Defendants or Individual Claimants. Instead of litigating in a forum of their choice, likely near where the individuals reside, they have been forced to litigate this issue in a foreign forum that could be very far from home.  Many of the Individual Claimants likely live hundreds, if not thousands of miles from this Court.  Given this, it does not appear that considerations of fairness weigh in favor of this Court exercising jurisdiction over this action.  *See St. Clair Intellectual Prop. Consultants v. Mirage Sys.*, 419 F. Supp. 2d 620, 624 (D. Del. 2006) (declining to exercise jurisdiction over declaratory judgment action because of inconvenience of Delaware forum for California defendants).

–31–

3.      Alternative Remedies

Another factor in this Court's decision to decline to exercise its jurisdiction over this declaratory judgment action is the availability and effectiveness of other remedies. *See, e.g.*, *Terra Nova Ins.*, 887 F.2d at 1224.  First, G-I continues to have the option of litigating the issue of successor and alter ego liability in each of the individual cases in which this issue has been raised.[13]  Second, G-I could amend its complaint and reassert its Rule 23 class action allegations. This would allow G-I to obtain a judgment binding against the Individual Claimants without the due process concerns present in this declaratory judgment action.  Third, G-I could create a § 524(g) trust, which would bar all actions against a third party that "is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor." *See* § 524(g)(4)(A)(ii).  Any of these three courses of action would allow G-I a resolution on the issue of successor and alter ego liability, while also providing protection for the due process rights of individual claimants.

**E.      Balancing The Factors**

Balancing the above factors, as outlined by the Supreme Court and the Third Circuit, the Court finds dismissal of this case is appropriate.  Given the parallel state proceedings and the lack of any federal question, federalism and comity concerns weigh in favor of the Court declining to hear this matter.  Considerations of fairness also weigh in favor of dismissal, as the use of this proceeding to bind present and future asbestos claimants would raise grave due

_____

[13] Currently, all of the state court actions are stayed.  This stay was issued upon the motion of Plaintiffs, and presumably would be lifted upon a request by Plaintiffs to do so.

process concerns.  Finally, given the inability of this proceeding to adequately resolve the controversy between the parties, this declaratory judgment action would not promote efficiency.

Like Judge Bassler, this Court understands that a binding determination on the issues of alter ego and successor liability "will aid in reorganizing [G-I] to maximize value without the cloud of future claims."  *In re G-I*, 328 B.R. at 698.  The Court also recognizes that it would be efficient to determine these issues in a single proceeding, rather than in thousands of state lawsuits.  However, a binding judgment on the alter ego and successor liability issues cannot come at the cost of the due process rights of current claimants, especially given the availability of alternative remedies, such as a Rule 23 class action or a § 524(g) channeling injunction, which would resolve these liability issues while also preserving Individual Claimants' rights.

Under these circumstances, the Court declines to exercise its jurisdiction.


## III.   CONCLUSION

For the reasons set forth above, the Court declines to exercise jurisdiction over this declaratory judgment action, and **GRANTS** the Committee's Motion for Judgment on the Pleadings.  Plaintiffs' motion to determine governing law is **DISMISSED** as moot.


 s/ Stanley R. Chesler
Stanley R. Chesler
United States District Judge

Dated:  May 30, 2008